T. O. SHINN ET AL. v. T. F. BOYD ET AL.

Decided December 23, 1903.

**Sale of Land—Commissions—Evidence.**

Evidence in an action for commissions for sale of land held to support a judgment in favor of defendants.

Error from the District Court of Harris. Tried below before Hon. W. P. Hamblen.

*Ewing & Ring* and *W. G. Love,* for plaintiff in error.

*A. R. Masterson* and *Brockman & Kohn,* for defendant in error.

PLEASANTS, ASSOCIATE JUSTICE.—Plaintiffs in error brought this suit to recover from defendants in error T. F. Boyd and Adam Reel the sum of $2025 alleged to be due them as commissions on the sale of land made by them for defendant Boyd under the following written agreement:

"Article of Agreement. Article of agreement entered into this 27th day of April, 1901, by and between Drs. Purdy and Boyd, parties of the first part, and C. W. Harral and T. O. Shinn, parties of the second part, witnesseth: That whereas said parties of the first part are joint owners of an undivided 1300 acres in the Elizabeth Turnbow league of land in Hardin County, Texas, and are desirous of selling 300 acres in said 1300 acre tract; now, therefore, the said parties of the first part hereby agree to and with said parties of the second part that in consideration that said second parties will endeavor to make a sale of 300 acres out of said 1300-acre tract for the sum of $40 per acre that said second parties shall have the right to make such sale any time up to 6 o'clock p. m. Monday, the 29th day of April, and in the event that said parties find a purchaser or purchasers for all, or 200 acres thereof, on the terms hereinafter mentioned, that the parties of the first part will allow and pay to said parties of the second part a commission of 5 per cent on the amount of the sale at $40 per acre, and will give and allow to said parties of the second part, in addition to said commission, any and all sums they may be able to sell said land at, over $40 per acre, and said first parties bind themselves in case of sale at a price in advance of said $40 per acre to make a deed or deeds therefor at such advance price; provided, that said purchaser or purchasers shall pay to said first parties in cash as earnest money the sum of $2000 for each 100 acres sold, and said first parties agree that they will at once proceed to have said lands partitioned. (which it is believed can be done amicably and without suit), and have set apart three tracts of 100 acres each of the average of the 1300 acres, that may be set off to said first parties to be at once conveyed to the purchasers on their paying the balance of the purchase money, and that any contract of sale made by said second parties shall

provide for the payment for the land on the partition and conveyance thereof as hereinbefore stated, time to be made of the essence of the contract, and in case of default of the purchaser the earnest money to become forfeit as liquidated damages, and said first parties will obligate themselves in case they fail for the period of sixty days to procure a partition of said land, at the election of the purchasers to refund the earnest money.

"Witness our hands at Houston, Texas. (Signed) K. F. Purdy, T. O. Shinn, T. F. Boyd, C. W. Harral, per Shinn."

The petition alleges that within the time specified in the contract for making the sale of said property, plaintiff sold 150 acres of said land to John Watson for $9750, of which amount $3500 was paid in cash to Boyd and Purdy, and Boyd and Purdy executed and delivered to Watson a contract of sale for said land, setting forth the terms thereof and acknowledging the receipt of $3500 as part payment of the purchase money. That on the same day the plaintiff sold an additional 150 acres of said land to J. D. Bone and others for the sum of $7500, $2500 of which was paid in cash to the said Boyd and Purdy, and a like contract of sale was executed and delivered to the said Bone and others. That afterwards the said Bone and others mutually agreed to rescind said sale, and said purchase money so paid by the said Bone and others was returned to them by Boyd and Purdy, and said contract canceled. That the said Harral and Shinn sold more than 200 acres of said land, and thereby earned and became entitled to receive from Boyd and Purdy 5 per cent of the purchase price of 150 acres of said land at the rate of $40 per acre, amounting to $300, and to the additional sum of $3750 as the excess price over $40 per acre, at which said land was sold to said Watson, making a total of $4050. That the said Purdy paid to the plaintiffs his share of said commissions and compensation, but that the defendant Boyd failed to pay his half thereof, or any part of it, and is still indebted to plaintiffs for said sum of $2025. That after having made said contract of sale the defendant Boyd refused to consummate same, although the purchaser was able and ready and willing to complete the purchase thereof. Plaintiffs also alleged that after said land was partitioned a portion of same was taken in the name of Adam Reel, and there was an alternative allegation that said land was either owned by Boyd, and the title taken in the name of Reel in trust for Boyd, or if owned by Reel, that Boyd was his agent, and was authorized to make the contract sued upon. The prayer of the petition is for the recovery of said sum of $2025 against both defendants, and for foreclosure of an attachment lien against the interest of defendants in the 1300-acre tract of land described in the petition.

The defendants answered by general demurrer and general denial, and also pleaded specially in bar of plaintiffs' right to recover that the contract of sale of 150 acres of said land alleged by plaintiffs to have been made with J. D. Bone and others was in fact an agreement by which plaintiffs and George D. Hunter, T. W. Archer and J. D. Bone con-

tracted with defendants for the purchase of 150 acres of said land upon the terms stipulated in the contract between plaintiffs and Boyd and Purdy; that after the execution of said contract of sale plaintiffs and their associates addressed to said Boyd and Purdy the following written request for a rescission of said contract:

"Houston, Texas, May 2, 1901.—To Messrs. Purdy & Boyd, or either: We hereby propose and offer to surrender to you your contract of sale and earnest money receipt for the sale and conveyance of 150 acres out of the Elizabeth Turnbow league, in Hardin County, Texas, in consideration of your paying to us the sum of $2500 on or before 5 o'clock p. m. Saturday, May 4, 1901, and to release from all liability, by reason of said contract and earnest money receipt, on receipt by us of said sum."

That in accordance with said request, the plaintiff and Harral and their said associates were released from said conditional sale, and the earnest money paid by them was returned to them and the sale negotiated by said plaintiff T. O. Shinn to himself and his associates was, through the instrumentality of plaintiff Shinn, abrogated and canceled, leaving only the negotiated sale of 150 acres to John Watson, which was fifty acres below the margin of acreage that plaintiff should negotiate a sale for, to entitle him to any commission under any event, according to said conditional contract.

The trial in the court below by a jury resulted in a verdict and judgment in favor of defendants.

The evidence showed that the plaintiffs, acting under their contract with Boyd and Purdy, as alleged in the petition, entered into a contract with John Watson on the 29th day of April, 1901, by which he agreed to purchase 150 acres of said land and to pay therefor the sum of $9750 upon the terms stated in the contract of Boyd and Purdy with plaintiffs. On the same day plaintiffs, as agents of Boyd and Purdy, made a contract with J. D. Bone by which he agreed to purchase 150 acres of said land for the sum of $7500 upon the terms specified by Boyd and Purdy in their said contract with plaintiffs. Thirty-five hundred dollars was paid to Boyd and Purdy on the Watson contract, and $2500 on the contract with Bone. Plaintiffs were interested in the Bone contract as joint purchasers with him of the 150 acres contracted to be sold him. The contract with Watson was never consummated by a sale of the land to him, and he demanded a return of the money paid by him after the expiration of the sixty days within which Boyd and Purdy were to procure a partition of the land. This money was not returned to him, however, and on July 3d he transferred his rights under his contract to Messrs. Hart and Sturges. After their purchase from Watson, Hart and Sturges demanded a deed from defendants, and offered to pay the balance of the purchase money due under Watson's contract. Defendant Boyd refused to convey his interest in the land to Hart & Sturges, and they sued him and recovered the money paid him by Watson.

On the 2d of May, 1901, four days after the execution by Bone of his contract to purchase 150 acres of the land he and those interested

with him in said purchase, including the plaintiffs, addressed to Boyd and Purdy the communication set out in defendant's answer asking that said contract of sale be rescinded. This request was granted by Boyd and Purdy and the $2500 paid them on said purchase was returned to plaintiffs and their associates in said contract.

We shall not discuss the various assignments of error presented in appellants' brief, because under our view of the law applicable to the undisputed facts no other verdict than one in favor of defendants could have been rendered, and therefore any errors that may have been committed upon the trial of the case were immaterial. Under the contract upon which plaintiffs seek to recover the defendant Boyd and his associate, Dr. Purdy, only agreed to pay plaintiff's commission for the sale of the land on condition that they secured purchasers for as much as 200 acres. In order to make up this quantity of land the 150 acres sold by plaintiffs to J. D. Bone and associates must be included. The undisputed evidence shows that plaintiffs, who were interested with said Bone and others in the purchase of said 150 acres, procured the cancellation of said contract of sale and the return of the money advanced thereon shortly after the contract was executed, and before either party thereto could by its terms demand its completion. Having thus voluntarily procured the rescission of the contract upon the complete performance of which by them their right to commissions for the sale of any of the land depended, they can not hold defendants liable for any commission under the contract sued on.

This view of the case necessarily leads to an affirmance of the judgment of the court below, and it is so ordered.

*Affirmed.*

## ON MOTION FOR REHEARING.

PLEASANTS, ASSOCIATE JUSTICE.—It is earnestly insisted by learned counsel for appellants, in a motion for rehearing filed by them in this cause, that we erred in affirming the judgment of the court below on the ground that appellants having procured a rescission of the contract of sale to Bone and others and thereby reduced the number of acres contracted to be sold to less than 200 were not entitled to the commission agreed to be paid them by appellees under the contract upon which the suit was brought. In support of this contention it is urged that under the contract sued on appellants' right to commissions was not dependent upon the actual sale of the land, but accrued and became complete when a purchaser was procured by them and a contract of sale executed between such purchaser and the appellees, and the subsequent rescission of such contract of sale could not affect appellants' right to their commission. This view of the case would be perfectly sound were it not for the fact that appellants were themselves associated with Bone as purchasers in the contract of sale made by him with appellees and were the active agents in procuring its rescission. Under their contract with appellees appellants were not prohibited from becom-

ing the purchasers of the land. They could have taken it all and would only have been required to pay appellees therefor the sum of $40 per acre less their 5 per cent commission. Let us suppose that instead of procuring the two contracts for the sale of the land they had simply executed an agreement with appellees to purchase the land upon the terms upon which under their contract they were authorized to sell it and had afterwards procured a rescission of such agreement and the return to them of the earnest money paid thereunder to appellees, under such circumstances it goes without saying that they would not be entitled to any commission unless by the terms of the contract of rescission their right to such commission was preserved. We think the case we are considering is not different in principle from the one supposed. Appellees agreed by their contract to pay appellants a large commission provided a purchaser was found for as much as 200 acres of their land, and, as suggested by counsel for appellant, in order to protect themselves in the payment of this commission required that the purchaser advance as earnest money a large portion of the purchase price of the land. Appellants having, in order to procure a contract of sale of a sufficient quantity of said land to entitle them to their commission, agreed to purchase a portion of said land for themselves and having paid to appellees their portion of the earnest money required to make their agreement of purchase binding can not, after inducing appellees to release them from their contract of purchase and return to them their earnest money, be allowed to recover of appellees commissions which were dependent upon said contract of sale. The case of Gilder v. Davis, 33 N. E. Rep., 559, relied on by appellants to sustain their contention, holds that it is only when the broker is not responsible for the noncompletion of the contract of sale he is entitled to a commission for procuring such contract. The question of appellants' right to recover upon a quantum meruit the reasonable value of his services in procuring the sale of the 150 acres of the land to John Watson is not raised by the pleadings.

We think it clear that under the facts no recovery can be had upon the contract upon which the suit was brought and the motion for rehearing is overruled.

*Overruled.*

Writ of error refused.