# L. H. BENTLEY and Others v. J. G. EDWARDS and Another.[1]

March 13, 1914.

Nos. 18,509—(294).

**Broker's commission — construction of contract — quantum meruit.**

Plaintiffs and defendants entered into a written contract by the terms of which plaintiffs agreed to find a purchaser for a 6,000 acre tract of land, and were to receive as commission all of the price received in excess of $10 per acre. Plaintiffs introduced a proposed purchaser to defendants, and they sold to such purchaser some 2,500 acres of the tract, at $13 per acre, the purchaser not being willing to take the entire tract. *Held:*

(1) The issue of whether the contract was entire or severable was properly raised by the answer.

(2) The contract construed and *held* entire, and not to authorize plaintiffs to sell or find a purchaser for any part of the tract less than the whole.

(3) Plaintiffs, not having performed their contract, are not entitled to recover commissions on the sale made on a *pro rata* basis; it not appearing that performance was prevented by defendants, or that the contract was modified.

(4) The complaint declaring on the express contract, and there being no pleading or proof of the reasonable value of plaintiffs' services, there can be no recovery on a *quantum meruit*. Whether under proper pleadings and evidence plaintiffs could recover the reasonable value of their services, notwithstanding they did not perform the contract, is not decided.

Action in the district court for Ramsey county against J. G. Edwards and J. C. Felthous to recover $7,705.60 as commission of $3 per acre for finding a purchaser for defendants' land. The facts

[1] Reported in 146 N. W. 347.

Note.—On the question of the performance of a contract by a real estate broker to find a purchaser or effect an exchange of his principal's property, see note in 44 L.R.A. 593. And for the effect upon the right to commission, of fact that owner sells to broker's customer at reduced price, see notes in 15 L.R.A.(N.S.) 272 and 34 L.R.A.(N.S.) 1050. And upon the right to commission where broker procures purchaser at price stated by his principal, but on slightly different terms in regard to cash or time of payment, and the owner refuses to consummate the sale, see note in 21 L.R.A.(N.S.) 935.

are stated in the opinion. The case was tried before Quinn, J., who when plaintiffs rested granted defendants' motion for a directed verdict. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*John Ott,* for appellants.

*O'Brien, Young & Stone,* for respondents.

BUNN, J.

This action was brought to recover the sum of $7,705.60, alleged to be due from defendants as commissions for procuring a purchaser for certain Montana land. At the close of the evidence the trial court directed a verdict for defendants. This appeal is from an order denying a new trial.

The complaint alleged in substance that defendants, who were engaged in the land business at St. Paul, on September 3, 1912, employed plaintiffs to find and procure a purchaser for a certain 6,000 acre tract of land, commonly known as the "Frear Tract," situate in Sweetgrass county, Montana, and agreed with plaintiffs that they should have as their commission all sums in excess of $10 per acre; that plaintiffs thereafter procured a purchaser for part of the land, and so notified defendants, who thereafter communicated with, and sold to such purchaser 2,568.18 acres of said land for $13 an acre. Judgment was demanded for the excess of $3 per acre, or $7,705.60. The defendants answered separately. The answer of defendant Felthous was a general denial with a specific denial of an allegation of the complaint that he and defendant Edwards were copartners. The answer of defendant Edwards, in addition to such denials, alleged that the contract of employment on which the complaint was based consisted of two letters written by defendant Edwards to plaintiff Cronan, and the latter's assent thereto. These letters, which admittedly constituted the contract between the parties, were as follows:

"August 31st, 1912.

"Mr. William Cronan,

"Palace Building, Minneapolis, Minn.

"Dear Sir:

"We herewith hand you checkings and blue print showing one

tract of 6,000 acres and one tract of 9,515 acres of land in Sweet-grass county, Montana. If you have any clients looking for tracts of land of the size of these either one of them will surely suit them. Price of the two tracts together or either separately is $10.00 per acre net to us. Whatever commission you desire to make will have to be added to this price. We can show the land at any time and will be pleased to give you full particulars.

"Yours truly,

"J. G. Edwards Land Co.,

"By J. G. Edwards."

"September 3rd, 1912.

"Mr. William Cronan,

"Minneapolis, Minn.

"Dear Sir:

"In putting the 6,000 acre tract of land in Sweetgrass county, Montana, up at $10.00 per acre net to us, it is understood that there is fifty cents per acre to be divided equally between you and our-selves in case you sell at that price. On the 9,515 acres if you sell it at $10.00 net it is understood that there is $.40 per acre to be equally divided between us. In addition to this whatever you get above $10.00 per acre you are to retain.

"Yours very truly,

"J. G. Edwards Land Co.,

"By J. G. E."

The reply admitted the writing and delivery of the two letters to plaintiff Cronan. The evidence showed that the letters and ac-ceptance were intended to be the sole evidence of the contract of the parties, and that plaintiffs Bentley and Parsons were jointly interested in the venture with Cronan. Plaintiffs testified that, on the day the letters were delivered, they gave to defendant Edwards the names of certain Montana men who were in the market for a tract of land. The 6,000 acre tract was not owned by Edwards or Felthous, but they or one of them had the exclusive sale thereof under contract with the owner. Plaintiffs told Edwards that the Montana people had been dealing for a 9,000 acre tract for which they were to pay $60,000 as a down payment, but that the deal had

fallen through, and that he thought Edwards could get "about $30,000 together there," this sum presumably referring to a down payment.

Late in September, 1912, defendants Edwards and Felthous went to Milbank, Montana. J. C. Felthous & Co., a corporation, had purchased the 6,000 acre tract and Edwards was equally interested with Felthous in the profits of the transaction. They had negotiations for the sale of the tract to Milbank Montana Land Co., a corporation in which the men whom plaintiffs claimed to have mentioned to Edwards as possible purchasers, were interested. These negotiations culminated on October 24 in a sale by the Felthous Co. to the Montana Co. of 2,568.18 acres of the 6,000 acre tract, at a price of $13 per acre. The rest of the tract was not sold, and still remains the property of the Felthous Co. Defendants claimed on the trial that plaintiffs were in no way instrumental in procuring the purchaser or purchasers to whom this sale was made, but this question was on the evidence for the jury.

The verdict was directed on the ground that the contract upon which plaintiff seeks to recover was never performed; that is, that plaintiffs agreed to find a purchaser for the 6,000 acre tract as a whole, while the purchaser procured by them was ready, able and willing to take but a fraction of the tract.

1. Plaintiff contends, in the first place, that the issue of entirety of contract was not raised in the answer of either defendant, and therefore that such a defense was waived. There is nothing in this point. Plaintiff sued on a contract, but did not set it out verbatim. The answer of defendant Edwards set out in full the writings constituting the contract sued on. Whether this contract was entire or severable appeared from the writings themselves, and it was neither necessary nor proper to plead the legal conclusion that defendant drew therefrom. There was nothing by way of new matter in the nature of confession and avoidance, nor was it claimed that the contract alleged in the complaint was invalid by reason of extrinsic facts, or that the services of plaintiffs were performed under any other contract.

2. Was the contract entire or severable? That is, were plaintiffs obliged, in order to perform their agreement, to find a purchaser

for the entire tract, or would it be a performance, *pro tanto,* if they found a purchaser for any number of acres of the tract less than the whole? This question, one of the intention of the parties, must be determined from the language of the letters, construed in the light of the surrounding circumstances. The first letter (dated August 31st, but written and delivered with the second letter on September 3rd) says: "If you have any clients looking for *tracts of land of the size* of these, *either one of them* will surely suit them. Price of the two tracts together or either separately is $10.00 per acre net to us." The second letter says: "In putting the 6,000 acre tract * * * up at $10 per acre net to us * * * there is fifty cents per acre to be equally divided between you and ourselves in case you sell at that price. On the 9,515 acres, if you sell *it* at $10.00 net * * * there is $.40 per acre to be equally divided between us." At the time the contract was entered into, the 6,000 acre tract was owned in its entirety by one individual, and defendants were agents for its sale. It is clear, in our opinion, that the contract was entire, and not severable. The mere fact that the price named was so much per acre is not important, any more than would be the sale of a lot or lots on a city street at so much per front foot. It is quite usual to name the price of a tract of land at so much per acre, whether the precise acreage be known or not, just as it is customary to ascertain the value of a thing sold by weight or measure. "The mere fact that the subject of the contract is sold by weight or measure and the value is ascertained by the price affixed to each pound or yard or bushel of the quantity contracted for, will not be sufficient to render the contract severable." 2 Parsons, Contracts (8th Ed.) 636. See also Johnson v. Fehsenfeldt, 106 Minn. 202, 118 N. W. 797, 20 L.R.A.(N.S.) 1069. We think that the letters contain no authority to plaintiffs to sell any part of either tract less than the whole.

3. The contract being entire, can it be apportioned? On principle there is but one answer to this question. There can be no apportionment of an entire contract. As stated by Parsons, the question of apportionment always addresses itself to a contract which has already been ascertained not to be single and entire. Such question

can never arise when it is once determined that the contract is entire. It is pretty well-settled law that, in case of an entire contract, part performance does not entitle a party to *pro rata* compensation, unless full performance is prevented by the other party. And this principle is applicable to a claim of commissions by a broker. Where his compensation is to be paid by commissions, the whole services or duty must be performed before any right to commissions arises, unless the act of the principal has prevented performance. Hyams v. Miller, 71 Ga. 608; see note to Lunney v. Healey, 44 L.R.A. 593. The model opinion of former Chief Justice Gilfillan in Weber v. Clark, 24 Minn. 354, seems conclusive of the question here. We quote it in full, as it is impossible to otherwise state the decision:

"Defendant owned a farm of two hundred acres, and agreed to pay Weber one hundred dollars if he would find a purchaser for it. Weber found a purchaser for one hundred and seventeen acres of the farm, who purchased that quantity from defendant. Weber sued for one hundred dollars.

"Clearly he was not entitled to recover anything. The contract was entire that Weber should find a purchaser for the whole farm, and that for doing so defendant should pay him one hundred dollars. Weber was not entitled to anything until he performed his part of the contract, and found a purchaser willing to buy the whole farm. This he did not do. Judgment affirmed."

It is urged that Weber v. Clark was wrongly decided and should be overruled. We think the decision is sound and should be followed. The case has been cited with approval by text books and courts; 1 Notes on Minn. Reports, 1156. The principle involved is elementary. A broker is not entitled to compensation until he has performed the undertaking assumed by him. 19 Cyc. 240. The undertaking assumed by plaintiffs was to procure a purchaser for the entire 6,000 acre tract. This they did not do. There was nothing in the contract that authorized a sale of a portion of the tract, nor was there any subsequent modification of the contract either in writing or by parol. The mere fact that defendants sold to the purchaser brought to them by plaintiffs a portion of the tract, does not, in the absence of a new contract, or conduct of the parties that

would justify the inference that the original contract was modified, show performance by plaintiffs of their agreement. The rule of Weber v. Clark was applied in Illingsworth v. Slosson, 19 Ill. App. 612; Carpenter v. Atlas Lumber Co. 123 App. Div. 706, 108 N. Y. Supp. 547; Veatch v. Norman, 109 Mo. App. 387, 84 S. W. 350. Plaintiffs cited Woods v. Stephens, 46 Mo. 555, as holding otherwise. The case is distinguishable in that the broker fulfilled his contract so far as he was permitted by the owner, and the contract was modi- fied. They further rely on a class of authorities holding substan- tially that where a broker introduces a purchaser, and the seller con- ducts negotiations with him and finally sells the property for a less sum or on different terms than named in the contract of employ- ment, the broker is entitled to a commission. Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426; 19 Cyc. 249, and cases cited; Ball v. Dolan, (S. D.) 15 L.R.A.(N.S.) 272, note. But where, as in the case at bar, the broker is to have as his compensation all in excess of a certain named price, and the purchaser he finds is unwilling to pay anything in excess of the price named, a sale to such purchaser at such price or a less sum will not entitle the broker to compensa- tion. Holcomb v. Stafford, 102 Minn. 233, 113 N. W. 449; 19 Cyc. 241, note 78. This is because the broker's right to compensa- tion is by the contract made conditional on the price received. In case of a sale at a less price he has not performed his contract, or earned his compensation. The principle of the line of cases, of which Hubachek v. Hazzard is an example, is that the contract does not make the broker's right to compensation dependent upon a sale at a net price to the owner, but leaves the price and terms of the sale subject to modification by the owner. The distinction is obvious. The principle of Hubachek v. Hazzard is not in point here, while the rule of Holcomb v. Stafford is mainly important as an applica- tion of the general rule that to entitle the broker to compensation he must perform his agreement.

4. The contention of plaintiffs that has the most merit as far as natural justice is concerned, is that they should be paid the reason- able value of the services they performed, although they did not perform their contract. Of course the doctrine of substantial per-

formance or that of part performance has no application here. Defendants did not prevent performance by plaintiffs. So far as appears, plaintiffs might still have earned their commission·by finding a purchaser for the rest of the tract. Whether there can be a recovery on a *quantum meruit,* except in cases where a recovery is warranted under the principles of substantial performance, or part performance, is a question that is not presented by the·pleadings or the evidence, and we do not decide it. Plaintiffs are not seeking to recover on an implied promise or *quantum meruit.* They declare in their complaint upon an express contract, and make no mention of the reasonable value of any services they performed. As a question of pleading, they could not recover on a *quantum meruit* if objection had been made seasonably. 1 Dunnell, Minn. Dig. § 1904. And no attempt was made to prove the reasonable value of plaintiff's services.

Our conclusion is that the trial court was right in directing a verdict for the defendants.

Order affirmed.