WILSON et al. v. SEARS.

(Court of Civil Appeals of Texas. Texarkana. April 1, 1914. Rehearing Denied April 16, 1914.)

BROKERS (§ 40*) — COMPENSATION — EMPLOYMENT OF BROKER.

Where the owner of land told a broker "to look around and find a purchaser," she authorized him to perform a valuable service; and while it may have constituted merely an offer which might be withdrawn before a purchaser was secured, where the offer was not withdrawn, and the owner sold to a purchaser with whom she had been brought in touch through the broker, knowing that the broker had showed the land to such purchaser, the law will imply a promise to pay the broker's commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 38-40; Dec. Dig. § 40.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by C. W. Sears against Laura C. Wilson and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Seth Shepard, Jr., of Dallas, for appellants. W. L. Mathis and Leake & Henry, all of Dallas, for appellee.

HODGES, J. This suit was instituted by the appellee against the appellants to recover the sum of $615 claimed as commissions on the sale of a tract of land situated in Dallas county. In a trial before the court without a jury a judgment was rendered in favor of the plaintiff below for the amount sued for.

The petition alleged, among other things, that: "On or about the 4th of October, 1910, the plaintiff was employed by the defendants and each of them, acting for themselves and acting through their agent with the knowledge and approval of the said defendants and each of them, to make a sale, on the usual commission, of a certain farm belonging to the defendants or one of them, situated near the town of Reinhart, Dallas county, Tex.; the said farm consisting of about 220 acres. That, for the said services to be rendered by the plaintiff in making sale of said farm, the defendants and each of them expressly and impliedly promised and agreed to pay to the plaintiff the usual brokerage commission, which said usual commission is and was 5 per cent. of the amount for which the property sells." Then follow other allegations showing that the appellee performed the services contemplated by the parties, and that the sum sued for is the amount to which he was entitled as a commission of the purchase price of the property.

The facts show that the land was the separate property of Mrs. Wilson.

The court found the following facts:

"(1) I find: That in the year 1910 Mrs. Laura C. Wilson, wife of Hunter L. Wilson, in her separate right, was the owner of the farm known as the 'Old John Hughes Farm,' located near Garland, Tex. That she bought the place about the summer of 1909, and sold it in the fall of 1910 to Luther Goforth. That some time during the summer of 1910 Mrs. Wilson, the defendant, had a conversation with the plaintiff, C. W. Sears, in relation to the sale of the said property for her. That this conversation occurred at the said farm, and Mrs. Wilson stated to the plaintiff, in answer to his inquiry if she wanted to sell her farm, that she would sell anything she had, provided she could make a profit on it, and asked the plaintiff to look around and see if he could get a purchaser, which he did. That plaintiff had received a commission from John V. Hughes when he sold the same place to Mrs. Wilson for making the sale, which fact was known to Mrs. Wilson. That Mrs. Wilson also knew that Sears was accustomed to receive commissions on land sales made by him. There was no written contract, and nothing was said about commissions, but plaintiff understood that, if he secured a satisfactory sale, he would receive a commission, as also did Mrs. Wilson. In addition to the conversation between plaintiff and Mrs. Wilson, the plaintiff, some months later, had a talk with Mr. John V. Hughes, a relative of Mrs. Wilson; Mrs. Wilson at that time being absent in New York, and Mr. Hughes attending to her business matters for her in her absence. That plaintiff asked Mr. Hughes if Mrs. Wilson still wished to sell her farm, and he said that she did, and plaintiff told him that, subsequent to his conversation with Mrs. Wilson, he had interested a couple of purchasers in the farm, and had him send her a telegram asking her what she would take for the place, and telling her what plaintiff could get for it. The telegram to Mrs. Wilson mentioned the name of plaintiff and showed that he was engaged in the effort of selling the farm for her. The answer of Mrs. Wilson to Mr. Hughes gave a price of $14,000 on the farm, if sale should be made by a certain date. The contents of this telegram were communicated by Mr. Hughes to plaintiff. In the conversation between plaintiff and Hughes before the telegrams were sent, plaintiff asked to be assured of his commissions, and Hughes stated to plaintiff that Mrs. Wilson would have to pay him a commission if plaintiff sold the farm.

"(2) Following his conversation with Mrs. Wilson, the plaintiff actively engaged himself in making a sale of the farm. He showed prospective purchasers over the place, including Luther Goforth, the man who later purchased the farm from Mrs. Wilson herself, and introduced Goforth and made him known to the tenant on Mrs. Wilson's farm, which tenant later, at the instance or request of Mrs. Wilson, brought Goforth and another prospective purchaser to Mrs. Wilson; she being then aware of the fact that the plaintiff had shown Goforth the premises and that Goforth was a prospective purchaser introduced to her tenant by the plaintiff, she being otherwise unacquainted with the said Goforth.

"(3) After plaintiff had shown the premises to prospective buyers, and the telegrams above mentioned had passed between Mr. Hughes and Mrs. Wilson, Mrs. Wilson within a few days arrived at Dallas and registered at the Southland Hotel. That the tenant of defendant, who had been introduced to the prospective buyers by the plaintiff, brought two of said buyers in to see the defendant Mrs. Wilson, and, after she had discussed the sale of the farm with both of the two said buyers, she made a sale of the same to Luther Goforth for the sum of $12,300, a less price than that for which she had authorized the plaintiff to make sale of the farm. The sale was made on the occasion of the first interview between Mrs. Wilson and Goforth, the purchaser. If Sears had offered the place to Goforth for $12,300, Goforth would have made the purchase from him. Plaintiff first called the attention of Goforth, the purchaser, to the farm as being on the market for sale. At the time that Mrs. Wilson sold the land to Goforth, the plaintiff and Goforth were still engaged in negotiations over the purchase upon the basis of the price which had been given to plaintiff by Mrs. Wilson. That the object of Mrs. Wilson in dealing direct with Goforth was to save the payment of a commission to plaintiff. That the usual broker's commission for the sale of farm land is 5 per cent. of the selling price."

Upon these findings, the court concluded. that the appellee was entitled to recover, and awarded judgment accordingly.

It is insisted in this appeal that the facts do not justify the judgment rendered, because they do not show the existence of a contract by which Mrs. Wilson became bound to pay the commissions claimed. The appellee testified, among other things, as follows: "I talked to her (Mrs. Wilson) about selling it one day when she was at the farm. She came over and stayed all night, and I asked her if she wanted to sell the farm, and she said she would sell anything she had, provided she could make a profit on it, and asked me to look around and see if I could get a purchaser, and I did so. The time I had this conversation with her was along several months before I sold the place." The testimony in other respects supports the court's findings of fact, unless it be that portion where he finds that Mrs. Wilson received and replied to the telegram sent by Hughes. According to her testimony, at the time this telegram was received in New

York she was on her way to Texas and did not see it, and knew nothing of any reply having been sent; the telegram was received and answered by her husband in her name. She further testified that Mr. Hughes had no authority to represent her in her real estate transactions. Goforth testified that he desired to buy the property, and went to Sears, the appellee, for the purpose of ascertaining the name of the owner, and whether or not it was for sale. He corroborates Sears in the fact that the latter showed him over the premises and undertook to communicate with Mrs. Wilson through Mr. Hughes. He also testified that, at the time he and Mrs. Wilson concluded to trade, he told her that Sears had shown him over the property.

Counsel for appellants insist that, taking the language of the appellee as to what occurred between him and Mrs. Wilson in its most favorable light, it is not sufficient to support the conclusion that a binding contract was made between the parties. We do not think it is necessary to hold that a contract in its entirety was concluded between the appellee and Mrs. Wilson at the time referred to, in order to support the judgment. When Mrs. Wilson expressed a willingness to sell her land and told the appellee to find a purchaser, she authorized him to perform for her a service which the law regards as valuable, and for which she might well expect to pay a consideration. It may be conceded that at that time, and for several months thereafter, this was but an offer which she had a right to withdraw if she wished to do so; but this was not done. When the appellee performed the service contemplated, he had a right to expect and demand compensation, and the law will imply a promise to pay it.

Counsel for appellants refers to Dunn v. Price, 87 Tex. 318, 28 S. W. 681, as being decisive of this case. In that case the facts showed that Dunn was the owner of the Mansion Hotel in Ft. Worth. In a conversation with Price, Dunn remarked that he wanted to sell this property and leave Ft. Worth; that he would take $30,000 for it. After some further conversation as to what was included in that offer, Price asked Dunn if he was in earnest about taking $30,000. The latter replied that he was in earnest; that he meant business; and said that if he (Price) did not think he was, to bring him a purchaser and see how quick he would make a deed. Price inferred from that language that he was requested to find a purchaser for the property. He produced one who was ready and willing to take the property upon the terms proposed by Dunn, but the latter insisted on other terms, which prevented a consummation of the trade. In a suit by Price for commissions, the Supreme Court held that the language attributed to Dunn was not sufficient to support a conclusion that Price had been employed to find a purchaser for the property. We think the facts of that case are clearly distinguishable from those involved in this. It will be observed, by a careful reading of the opinion, that the Supreme Court held that Price had no authority to act for Dunn. The result would have been different, we think, had Dunn used language attributed to Mrs. Wilson in this instance, "Look around and find a purchaser." The evidence shows that Mrs. Wilson knew that the service had been performed by appellee before she concluded her trade with Goforth.

The judgment of the district court is affirmed.