## BARNARD v. HARDY

No. 4873.   Decided November 18, 1930.   (293 P. 12.)

*Joseph E. Evans* and *Thatcher & Young,* all of Ogden, for appellant.

*C. R. Hollingsworth,* of Ogden, for respondent.

FOLLAND, J.

This action is by plaintiff, a real estate broker, to recover a commission on sale of real estate. The court, sitting with-

out a jury, rendered judgment for defendant. Plaintiff appeals.

Respondent moves to strike the bill of exceptions because "the bill was not served, settled and filed within time, and to thereupon affirm the judgment of the district court because no ruling is presented for a review by this court, except as required to be contained in a bill of exceptions." Judgment was made and entered October 3, 1928. On October 29, 1928, appellant applied for and was granted sixty days additional time, and on January 3, 1929, thirty days additional time, within which to prepare, serve, and file the bill of exceptions. The bill was made up and served upon defendant's counsel January 24, 1929, and was settled and signed by the trial judge March 2, 1929. Notice of appeal was served and filed March 15, 1929. It is apparently respondent's contention that the thirty days allowed by Comp. Laws Utah 1917, § 6969, as amended by chapter 51, Laws of Utah 1925, commenced to run upon the entry of judgment, without notice, and, as October and December each have thirty-one days, the time as enlarged by the sixty days' extension on October 29, 1928, expired January 1, 1929; hence the extension granted January 3, 1929, was made after the time had expired, and was void.

The motion is based upon the record, which fails to show that notice of entry of judgment was served upon appellant. At the time of the argument in this court appellant produced and tendered for filing the original notice of entry of judgment which had been served October 8, 1928. If the time, including additional time granted by the court, be computed from October 8th, the date of notice, instead of from October 3d, the date of entry of judgment, the bill was served and filed in time. We cannot now consider this document, the notice so served, for the reason that it was not accompanied by a certificate of the clerk of the district court and has not been incorporated into and made a part of the record on appeal. The time to prepare, serve, and file the bill of exceptions in a case such as this,

where the case is tried by the court without a jury, commences to run from service of notice of entry of judgment. Comp. Laws Utah 1917, § 6969. Where this notice is not given, and in the absence of waiver of such notice, the appellant may prepare and serve the bill of exceptions at any time before appeal, and even after appeal. *Jenkins* v. *Stephens*, 64 Utah 307, 231 P. 112. The time after appeal when this must be done has been limited to thirty days by Laws of Utah 1925, chap. 51, p. 111 (an amendment of Comp. Laws Utah 1917, § 6969) but this time may be enlarged by the court upon timely application. *Hurd* v. *Ford* (Utah) 276 P. 908.

The bill of exceptions in the instant case was served on respondent January 24, 1929, and settled and filed after settlement March 2, 1929, all before the appeal was taken. The bill was therefore served, settled, and filed within time unless the appellant, by something done by him, waived the service of notice of entry of judgment. The question of waiver is not argued in the briefs. Applications to the court for extensions of time cannot, under the decisions of this court, be considered to be such a waiver. *Burlock* v. *Shupe*, 5 Utah 428, 17 P. 19. The case of *Schvaneldt* v. *Clegg* (Utah) 280 P. 230, relied upon by respondent, is not in point. The question there decided was that additional time granted prior to the entry of judgment could not be counted as part of the time within which to prepare, serve, and file the bill of exceptions. The motion to strike the bill of exceptions, being without merit, is denied.

Coming to the merits of the case, this is an action for the recovery of a commission on the sale of certain real estate, and is based upon the following listing agreement:

"Ogden, Utah, May 23, 1927.
"W. H. Barnard:

"Enter my property, together with the terms of sale as described on reverse side hereof on your list, and endeavor to procure a purchaser for said property in accordance with such terms. In consideration thereof I will and do hereby grant to you the exclusive right, in my behalf, to sell said property, and authorize you to execute,

for me, and in my name, a contract therefor and receive a deposit of money sufficient in your opinion to assure the performance thereof by the purchaser. Special and general taxes, insurance, interest and water rent are to be prorated as of the day of transfer. I will furnish abstract of title brought down to date showing merchantable title and will convey property by warranty deed.

"I reserve the right, however, at any time after 90 days from the date of your acceptance hereof to revoke your authority by written notice to you of at least fifteen days, but not otherwise, and until then you may rely upon the authority hereby granted you as continuing.

"If you procure a purchaser for said property, ready, and willing and able to take it on said terms, or any other terms that may be agreeable to me, or should I sell said property at any time during a period of six months from date of termination hereof to any person, solicited by you or your associates, or revoke the authority hereby granted contrary to the terms hereof, I will pay you in further consideration of such listing and service rendered by you, a commission of 5% of the selling price, authorized or actual as the case may be, together with your cost of suit and attorney's fee in the event of action brought to recover the same. I warrant the statements on the reverse side to be true.

"R. J. Hardy.

"Witness: W. H. Barnard.
"Accepted this 23 day of May 1927.
"W. H. Barnard Licensed Broker,
"By ————————.”

This agreement was on a printed form used by the plaintiff; only the dates, the ninety-day limitation, the rate of commission, and the signatures of the owner and of the witness being written.

On the reverse side appears the price, $14,000 and the description, listing a house of 5 rooms, size of lot 60x150, store 40x25, $2,000 stock and fixtures, full basement.

On August 4, 1927, the defendant sold to one Hopkins a portion of the property listed, a tract 40x40, including the store, but retained the balance of the land and the residence thereon. Plaintiff seeks to recover a commission on such sale.

The evidence shows that defendant owned the property listed, on which was the residence he occupied and the

grocery store he conducted; that he was desirous of selling and the plaintiff solicited a listing, stating that he had a buyer for the property, and thereupon defendant signed the listing agreement. Plaintiff made efforts to sell the property to the prospect he had in mind at the time of soliciting the listing, also to at least one other party, and advertised the property, but without results. Later he states that defendant telephoned him that a man by the name of Hopkins was down to see the property and he wanted plaintiff to locate Hopkins and have a talk with him. Plaintiff did locate Hopkins, had a talk with him regarding defendant's property, and was told by Hopkins that Mr. Kay, another real estate man was representing him. He then testified to another telephone conversation with the defendant that: "He (defendant) said Mr. Hopkins had been there and given him a cash offer of $5,000 for the store and asked me what I thought about it. I told him he would have to be his own judge in regard to the price, because he knew more than I did the value to put on the store, and I says, 'Buyers for grocery stores I have found are very scarce, and especially cash buyers,' and for him to take that into consideration."

He also testified to a subsequent conversation in which he again advised defendant to "use his own judgment." The testimony of plaintiff is disputed by defendant who claims that he had no conversation with plaintiff regarding Hopkins until he advised him that Hopkins had made a cash offer of $5,000 for the store, and, that plaintiff told him to "go ahead and sell it, that he (plaintiff) didn't have a nibble on it." Some corroborative testimony was produced by both parties, and the testimony of Hopkins the purchaser and Kay his broker indicated that Kay, rather than the plaintiff, was the procuring cause of the sale.

The trial court found the issues in favor of defendant, finding: (1) The execution and delivery of the listing agreement above set forth; (2) that there was no consideration therefor; (3) that plaintiff released defendant therefrom; and (4) that defendant sold a portion of said property to

Hopkins for $5,000, but that said purchaser was not procured by plaintiff, nor was plaintiff in any way instrumental in effecting the sale. Judgment was entered in favor of defendant, and plaintiff appeals therefrom, assigning as error each of the findings except the first relating to the execution of the listing contract.

That there is abundant evidence to sustain the finding that the purchaser was not procured by plaintiff, nor was plaintiff in any way instrumental in effecting the sale, cannot well be questioned. Hence the authorities cited by plaintiff holding that a broker who is the procuring cause of a sale, or who produces a customer who is ready, willing, and able to purchase upon the agreed terms, is entitled to his commission, are of no avail to plaintiff.

However, the plaintiff contends that, even though he were not the procuring cause of the sale, yet, under the clause agreeing to pay a commission "should I sell said property * * * to any person solicited by you or your associates," he was entitled to a commission on this sale. He evidently wishes us to construe the agreement to mean "should I sell said property or any portion thereof," etc. This we are unable to do. The agreement was prepared by plaintiff, on a printed form furnished by him, and must therefore be construed most strongly against him. 13 C. J. 545; *Mt. Vernon Refrigerating Co.* v. *Wolf* (C. C. A.) 188 F. 164; *Christian* v. *First Nat. Bank* (C. C. A.) 155 F. 705; *Hawaiian Pineapple Co.* v. *Saito* (C. C. A.) 270 F. 749; *Boggess Realty Co.* v. *Miller,* 227 Ky. 813, 14 S. W. (2d) 140; *Penn Star Min. Co.* v. *Lyman,* 64 Utah 343, 231 P. 107.

Is this agreement an entirety, or is it severable? That is, could the plaintiff be said to have performed his contract so as to entitle him to a commission had he produced a purchaser able, ready, and willing to purchase some portion, but not the whole of the property listed, the defendant declining to sell less than the whole? To ask the question is to answer it. The purchase price of the entire property was fixed at $14,000, and there is nothing

from which this price can be prorated without the making of a new contract, which under our statute must be in writing. *Watson* v. *Odell*, 58 Utah 276, 198 P. 772, 20 A. L. R. 280. As the parties did not make such new contract, the court is unable to make it for them. We hold that the contract being entire, the right to a commission is dependent upon a full performance of the same, not a partial performance. Such, under similar agreements, is the well-established rule. In *Bentley* v. *Edwards*, 125 Minn. 179, 146 N. W. 347, 349, 51 L. R. A. (N. S.) 254, Ann. Cas. 1915C, 882, the court says:

"The undertaking assumed by plaintiffs was to procure a purchaser for the entire 6,000-acre tract. This they did not do. There was nothing in the contract that authorized a sale of a portion of the tract, nor was there any subsequent modification of the contract either in writing or by parol. The mere fact that defendants sold to the purchaser brought to them by plaintiffs a portion of the tract does not, in the absence of a new contract, or conduct of the parties that would justify the inference that the original contract was modified, show performance by plaintiffs of their agreement."

The same holding was made in *Mayer* v. *Haaren*, 57 N. Y. Super. Ct. 574, 5 N. Y. S. 436, where, under a contract for the sale of four houses for a certain price, the broker sought to recover a pro rata commission on the sale of one only; in *Carpenter* v. *Atlas Imp. Co.*, 123 App. Div. 706, 108 N. Y. S. 547, where a broker authorized to effect a sale of an entire property, was denied commission on sale by principal of two small tracts to a customer procured by the broker; in *Yerkes* v. *Osborne*, 42 Pa. Super. Ct. 253, where the property included a vacant lot, and it was held that the broker was not entitled to a commission upon sale of the property having the improvements, but excluding the vacant lot; in *Boyd* v. *Big Three Ranch Co.*, 22 Cal. App. 108, 133 P. 623, where a sale of a small tract out of a larger property did not entitle the broker to a commission. To the same effect see *Witte* v. *Taylor*, 110 Cal. 224, 42 P. 807; *Wilson* v. *Rafter*, 188 Mo. App. 356, 174 S. W. 137; *Cone* v. *Keil*, 18 Cal. App. 675, 124 P. 548; *Frenzer* v. *Lee*, 3 Neb. (Unof.)

69, 90 N. W. 914; *Shinn* v. *Boyd,* 34 Tex. Civ. App. 151, 77 S. W. 1027; *Fletcher* v. *McMillan,* 132 Ga. 477, 64 S. E. 268.

Apparently this action is brought upon the theory that the contract is severable, and that plaintiff is entitled to a commission pro tanto upon a sale of part of the property. The contract does not so provide, and it is not for the court to change its terms.

We need not discuss other assignments of error, because, under our view of the law applicable to the facts, no other judgment than one in favor of defendant could have been rendered.

JUDGMENT AFFIRMED, with costs.

CHERRY, C. J., and ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.

STRAUP, J.

I concur, but also on the further ground that, according to the findings supported by sufficient evidence, the sale made by the defendant was not the result of any solicitation or procurement of the purchaser by the plaintiff.