## DALLAS JOINT STOCK LAND BANK OF DALLAS V. D. E. MAGEE.

No. 7463.  Decided February 28, 1940.
Rehearing overruled April 3, 1940.
(136 S. W., 2d Series, 1117.)

*McCombs, Andrews & Johnson* and *Lawther, Cramer, Perry & Johnson,* all of Dallas, for plaintiff in error.

As plaintiff was a volunteer in securing purchasers for the bank's lease on the land, and the bank refused to sell as soon as it discovered that plaintiff was looking to it for his commission because it was unwilling to reduce its cut price further by deducting from that price plaintiff's commission, the bank was not liable for such commission. White v. Templeton, 79 Texas 454, 15 S. W. 483; Stewart Realty Co. v. Ridder, 224 S. W. 1115; Newell v. LaFarelle, 225 S. W. 853.

*Slay & Simon,* of Fort Worth, for defendant in error.

Where defendant accepted the services of plaintiff who found a purchaser who was willing, able and ready to accept the terms of defendant as to the sale of the lease, defendant is liable for a broker's commission therefor. Bergere v. Parker, 170 S. W. 808; Clem v. Forbess, 10 S. W. (2d) 223; Mills v. Berla, 23 S. W. 910.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

We had a mistaken view of the record when we granted the writ in this case. A careful consideration thereof, after submission, in connection with the application and briefs, has led us to the conclusion that the opinion of the Court of Civil Appeals, reported (this volume 621) in 117 S. W. (2d) 473, is correct, and should be permitted to stand. It is accordingly approved. Any further writing on the case could hardly be justified.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court February 28, 1940.

For the convenience of the Bar the opinion of the Court of Civil Appeals is here inserted as follows:

MR. JUSTICE ALEXANDER delivered the opinion of the Court of Civil Appeals, Tenth District.

This suit was brought by D. E. Magee against Dallas Joint Stock Land Bank of Dallas to recover a real estate broker's commission for the sale of an oil and gas mining lease on certain land owned by the defendant in Titus County. Trial before a jury resulted in a verdict and judgment for plaintiff for the sum of $1462.50. The defendant appealed.

The plaintiff alleged that the defendant owned two certain tract of land in Titus County, containing a total of 65.81 acres; that the defendant, through its agent Riley, employed plaintiff to find a purchaser for an oil and gas mining lease on said land, the purchaser to pay the price of $150.00 in cash and $300.00 in oil per acre for said lease and certain other terms not necessary to here mention, and that the defendant agreed to pay the plaintiff for his services in finding a purchaser on the above terms the sum of five per cent of the purchase price as a commission. In the alternative, the plaintiff alleged that the defendant owned the 65.81 acres of land in question; that plaintiff informed the defendant, through its agent Riley, that he had a prospective purchaser for the lease on said land and expressed a desire to be allowed to negotiate for a sale of such lease to said purchasers; that said defendant, well knowing that plaintiff was attempting to negotiate a sale of said lease to said purchasers, "accepted his services in procuring the said Joe De Grazier and Dan Hartsell as purchasers for said lease, and that on numerous occasions during said time defendant's agents negotiated with plaintiff and with Hartsell and DeGrazier * * * and that by accepting the services of said plaintiff, the defendant not only expressly, as hereinabove set out, but also by implication, in allowing and permitting him to negotiate for the sale of said lease, agreed and became obligated to pay to said plaintiff for his services the reasonable and customary commission for similar services"; and that the reasonable value of his services was the sum of five per cent of the purchase price of said lease. It was further alleged that from time to time the plaintiff informed the defendant that he was expecting a commission from said sale and that the defendant, with knowledge of such facts, allowed him to continue his services in an attempt to bring about a sale of said lease; that he found a purchaser for said lease in the persons of Hartsell and DeGrazier who agreed to and were ready, able and willing to purchase said lease on the terms previously stipulated by the defendant, but that the defendant refused to carry out said agreement and declined to pay the commission.

The appellant challenges the sufficiency of the evidence to support the judgment.

Among other things, the defendant testified that he had previously been employed by the land bank to sell land for it on a commission; that he talked to Mr. Riley, who was the land man for the land bank, and learned that said bank owned 159 acres in Titus County. He asked for permission to sell the oil and gas mining lease on said land and Riley finally agreed that if

Magee would find a purchaser for the lease on the 159 acres at $400.00 per acre, the bank would pay him a commission of five per cent. Magee offered the entire tract to Hartsell and De-Grazier, who made a counter offer of $100.00 per acre cash and $250.00 in oil. This counter offer was communicated from Magee to Riley and from Riley to Ferguson, the president of the land bank, who rejected the same. Hartsell and DeGrazier then offered $400.00 per acre, $150.00 per acre in cash and $250.00 per acre in oil, for the lease on two small tracts containing 65.81 acres off of the north side of the 159 acre tract. Magee then went to see Ferguson in person and told him of such offer. Ferguson replied, "Well, I won't take $400.00 an acre for those two north tracts (the 65.81 acres). I ought to have $500.00, but I will compromise with them on $450.00, $150.00 in cash, $300.00 in oil payable out of the 1/8th of the 7/8th." Magee further testified, "And I told Mr. Ferguson that I hated to keep bothering them about that trade, but I wanted to make my commission, and Ferguson said, 'Don't keep trying to jew me down, try to get our price for it.' * * * And I told him, 'I am going to do my best to get what you want for it, because I want to make my commission. * * * What I said about that, he didn't blame me for making my commission, but try to get what they wanted for it." Hartsell and DeGrazier finally agreed to buy the 65.81 acres on the terms stipulated by Ferguson. Magee communicated this fact to Ferguson, who told him, "Go to my lawyers' office and they will prepare the contract." While the lawyers were preparing the contract, someone asked who was to pay the broker's commission and upon being informed that Magee expected the land bank to pay the commission, Ferguson called the deal off and refused to consummate same. Magee testified on cross-examination that he did not tell Ferguson that he was expecting a commission from the land bank for the sale of said lease. Ferguson testified that he did not employ Magee to sell the lease; that he did not agree to pay him a commission for the sale of the lease and did not know that he was expecting a commission from the land bank. He said he thought Magee was buying the lease for himself.

The jury, in answer to special issues, found as follows: That Riley, acting for the land bank, employed Magee to find a purchaser for an oil and gas mining lease on the 65.81 acres of land and agreed to pay him a commission of five per cent for his services; that Riley was acting within the scope of his employment as an agent of the land bank in making said agreement; that Ferguson, president of the Dallas Joint Stock Land Bank, agreed to or concurred in such employment; that Magee

procured a purchaser for said lease who was ready, able and willing to purchase same on terms satisfactory to the land bank; that Ferguson, as president of the land bank, "adopted and accepted the work and efforts of plaintiff Magee" in finding such purchaser; and "had knowledge that the plaintiff, D. E. Magee, was expecting a commission from the transaction involved herein"; and that "a truly authorized agent of the defendant, after receiving knowledge of the plaintiff's expectations of a commission, accepted the services of the plaintiff, D. E. Magee." The jury further found that five per cent was the usual and customary commission for such transactions.

■ We agree with appellant that the appellee was not entitled to recover on the contract alleged to have been made by him with Riley, for regardless of whether Riley had authority to bind the bank in the making of such an agreement, the evidence shows that under said agreement, Magee was to find a buyer for the lease on the entire 159 acres of land and not on the 65.81 acres. He did not perform the contract alleged to have been made by him with Riley when he found a purchaser for only a part of the land covered by the alleged agreement. Colbert v. Dallas Joint Stock Land Bank, 129 Texas 235, 102 S. W. (2d) 1031, 1034; 10 Tex. Jur. 410, 411; Shinn v. Boyd, 34 Texas Civ. App. 51, 77 S. W. 1027; First National Bank of Houston v. Cardinell, 42 S. W. (2d) 145; Goodwin v. Gunter, 109 Texas 56, 185 S. W. 295, 195 S. W. 848; 7 Tex. Jur. 447; Bentley v. Edwards, 125 Minn. 179, 146 N. W. 347, 51 L. R. A. N. S. 254, and following annotations. It is not necessary therefore for us to determine whether Riley had authority to make such contract and bind the bank thereby.

■■ However, the plaintiff, in the alternative, sought recovery on both an expressed and an implied contract alleged to have been made with Ferguson, who was president of the land bank and who undobutedly had authority to make such a contract. The evidence set forth in the preliminary statement was ample to establish that Ferguson knew that Magee was trying to sell the lease to Hartsell and DeGrazier, and that he was expecting a commission from someone for his services. There was no direct evidence that Ferguson knew that he was expecting the bank to pay such commission, but we think the evidence was sufficient to authorize the jury to infer such knowledge. In this connection, Magee testified that he had been engaged for a number of years in selling real estate on commission; that the Dallas Joint Stock Land Bank had listed a large number of other tracts of land with him for sale, and had agreed to pay him a commission;

that as such agent he had shown to prospective purchasers a large number of the tracts of land so listed with him and had carried one of said transactions far enough to secure a written contract of sale, but that the deal had fallen through because the bank had been unable to make good title. He testified that he informed Ferguson that he was anxious to close this particular deal because he wanted to make his commission. Ferguson urged Magee to try to get the bank's price and quit trying to secure a reduction therein. This indicates that Ferguson expected Magee to look after the interests of the bank instead of the interests of the purchaser. All these circumstances were sufficient, we think, to justify the jury in inferring that Ferguson knew that Magee was expecting a commission from the bank. If Ferguson, knowing that Magee was expecting a commission from the bank, quoted Magee a price for the lease and requested him to obtain such price, there was an implied contract to pay Magee the reasonable value of his services in procuring such a purchaser. 7 Tex. Jur. 407; Williams & Jones v. Gouldy, 239 S. W. 364; Toland v. Williams & Wiley, 129 S. W. 392; Wilson v. Sears, 166 S. W. 38; Marr-Piper Co. v. Bullis, 1 S. W. (2d) 572. And if Magee performed the contract by finding a purchaser who was ready, able and willing to buy at the price stipulated, he would be entitled to the commission and the bank could not avoid liability therefor by arbitrarily refusing to go through with the deal. 7 Tex. Jur. 445, Sec. 56; Villareal v. Passmore, 145 S. W. 1086; Willson v. Crawford, 61 Texas Civ. App. 580, 130 S. W. 227, 230; Athens v. Hurlock, 156 S. W. 1145.

■ Appellant complains because the appellee, plaintiff below, did not fully discuss the whole case, including all the issues, in the opening argument to the jury. The record discloses that seventy-five minutes was allotted to each side for argument of the case. Mr. Simon made the opening argument for plaintiff. He talked for thirty minutes and discussed only five of the ten issues. Mr. Slay made the closing argument for plaintiff, but the record is silent as to the character of argument made by him. District Court Rule No. 36 reads as follows:

"In all arguments, and especially in arguments on the trial of the case, the counsel opening shall present his whole case as he relies on it, both of law and facts, and shall be heard in the concluding argument only in reply to the counsel on the other side."

In our opinion, no reversible error is presented merely because a plaintiff fails to open and fully discuss the whole case in

his opening argument, because no injury could result to the defendant therefrom. Reversible error is presented by a violation of the rule only when plaintiff is permitted to discuss in the closing argument matters that should have been discussed in the opening argument. Appellant relies on the cases of Bender v. Mettler, 17 S. W. (2d) 182; Dallas Railway & Terminal Co. v. Burns, 60 S. W. (2d) 801 and Teague Sewer Co. v. Benbrook, 38 S. W. (2d) 845. An examination discloses that in each of these cases the plaintiff was permitted to discuss in the closing argument issues that had not been discussed in the opening argument. Those cases therefore are not in point in this case. Since the record in this case does not disclose what character of argument was made by Mr. Slay in closing the case, we are not able to say that the rights of the defendant were prejudiced thereby.

We have carefully considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.