## W. W. DUNN v. J. F. PRICE.

### No. 197.

1. **Conflict in Testimony on Appeal.**

The testimony being conflicting, upon a verdict for the plaintiff, the issue being the substance and effect of a conversation between the parties as a contract or not, on appeal the testimony of plaintiff will be considered as true, in determining whether the verdict can be sustained .............. 321

2. **Contract—Effect of Words Used.**

Where words are relied upon as making an offer of compensation for doing an act, and the parties at the time stand face to face, the intention to make the offer should be manifested in the language used, at least with reasonable certainty. See example ...................................... 321

3. **Practice.**

Where, after viewing the transaction in the light most favorable to the plaintiff, the conclusion is reached that the language used does not justify the inference that a contract was made, it is the duty of the trial court to instruct a verdict for the defendant ........................................ 322

4. **Commission for Making Sale—Case in Judgment.**

Dunn stated in presence of Price, a land agent, that he wanted to sell the Mansion hotel, naming his price. After some conversation between them, Price asked, "if he was in earnest." Dunn replied that "he was in earnest; that he meant business, and that if I did not think he was to bring him a purchaser, and see how quick he would make deed." *Held*, that this did not constitute a contract upon which Price could recover commissions upon procuring a purchaser at the price named ...... ....... 320, 322

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Tarrant County.

The opinion gives a full statement of the case.

*W. L. Husbands* and *W. B. Ford*, for plaintiff in error.—An offer by the owner of property to sell the same at a given price, even in conversation with a real estate broker, in absence of actual employment of the broker by the owner of the property, would not entitle the broker to commissions for finding a party who was willing to buy the property at the price offered. Mere volunteer services which result in the procurement of a party to so buy will not entitle the broker to commissions. Hinds v. Henry, 36 N. J. L., 328; Keys v. Johnson, 68 Pa. St., 42; Cook v. Welch, 9 Allen (Mass.), 350; Chitty on Con., p. 9; Tucker v. Wood, 12 Johns., 190; Tuttle v. Love; 7 Johns., 470.

Proposal not expressly accepted not sufficient: Chitty on Con., p. 12.

Both must be bound at the same time: Chitty on Con., p. 17. Keep v. Goodrich, 12 Johns., 397.

Proposal with stated terms no contract: Burnett v. Biscoe, 4 Johns., 235.

Voluntary compliance without agreement not sufficient: Johnson v. Fessler, 7 Watts, 48; Train v. Gold, 5 Pick., 380.

Law will not imply promise contrary to meaning of language used by party: Whiting v. Sullivan, 7 Mass., 107; Worthen v. Stearns, 4 Mass., 448; Weston v. Davis, 24 Me., 374; Walker v. Brown, 28 Ill., 378.

Intention of both parties must be communicated: Pollock on Con., pp. 1, 2, 4, 5; Shupe v. Galbraith, 32 Pa. St., 10; McCulloch v. Ins. Co., 1 Pick., 278.

Mere intimation of purpose not sufficient: Whart. on Con., secs. 1, 6, 8.

Mere offer to make contract not sufficient: McDonald v. Berwick, 16 N. W. Rep., 240; Knowlton v. Kershaw, 18 N. W. Rep., 172; Quick v. Wheeler, 78 N. Y., 300.

If any misunderstanding, there will be no contract: 1 Wait's Act. and Def., p. 84; Bank v. Hall, 101 U. S., 43.

Not bound to do acts not contracted for, merely because other party expected or understood he would: Johnson v. Sellers, 33 Ala., 265.

Mere affirmation or proposition not sufficient: 1 Pars. on Con., *pp. 475, 476; Ball v. Newton, 7 Cush., 599.

If party addressed go away he can not return and insist upon an acceptance, when he did not at first accept: 1 Pars. on Con., *p. 481.

Implication or inference can not add to terms of agreement: Socoa v. True, 53 N. H., 627; Ogden v. Saunders, 13 Wheat., 341; United States v. Russell, 13 Wall., 623.

Broker must prove actual employment: 2 Am. and Eng. Encyc. of Law, pp. 586, 579, 588; 3 Id., p. 842; 39 Conn., 45; 37 Md., 365; 36 N. J. L., 328; 39 Ala., 70; 3 Am. Rep., 349; 9 Pac. Rep., 325.

Broker must bring parties together: 28 N. W. Rep., 796; 38 Am. Rep., 441; 21 Am. Rep., 192; 43 Cal., 306.

*Ross, Chapman & Ross*, for defendant in error.—The testimony raised the issue of employment by appellant of appellee, and it would have been error in the court not to have submitted that issue to the jury.

GAINES, CHIEF JUSTICE.—The defendant in error brought this suit against plaintiff in error to recover compensation for services rendered in procuring for the latter a purchaser of certain property, under an alleged contract. There was a verdict and judgment for the defendant in error in the trial court, which judgment was affirmed in the Court of Civil Appeals.

The defendant in error having been sworn as a witness in his own behalf, testified as follows in reference to the transaction which resulted in the litigation: "Sometime during the month of December, 1887, I met W. W. Dunn in front of the Mansion hotel property on Main street, in Fort Worth. In course of the conversation with Mr. Dunn he remarked that he wanted to sell out and leave Fort Worth; that he would take $30,000 for the Mansion hotel property. I asked him what that included. He said that included the Mansion hotel property proper, and the two-story business houses on Main street then occupied by L. C. Pitt and Sam Benson, respectively, but that it did not include the corner, as that belonged to his son. I then asked him if he was in earnest about taking $30,000, and he replied that he was in earnest, that he meant business, and that if I didn't think he was, to bring him a purchaser and see how quick he would make deed. I took it that he meant for me to sell the property. I. R. Darnell and T. P. Boyd were present during this conversation. I left Mr. Dunn, and started out to find a purchaser. I first saw B. C. Evans, and he declined to take the property. I met Mr. Thomas Roche on the street in front of the Pickwick, and told him I could sell the property above described for $30,000, and asked him if he wanted to take it; and he said, 'Wait a few minutes until I see the boys.' He went into the hotel, and in a few moments came out of the hotel with his brother Jerry Roche, M. C. Hurley, and probably some one else, and said to me, 'We will take the property.' I then went over to the Mansion hotel and told Mr. Dunn I had found a purchaser for his property. He thought a minute or two, and asked who it was. I told him Thomas Roche, and I thought his brother, M. C. Hurley, and Swasey were in with him. He then stated that they would have to take the furniture. I told him that was not the contract; that nothing had been said about the furniture; that I had found a purchaser of the property at the price set, and I didn't believe they would take the furniture. He said they could not get the property unless they would take the furniture at $15,000. I told him I would see Mr. Roche. I did see Mr. Roche, and told him what Mr. Dunn said. He said he did not want the furniture at any price, but would take the other property. Mr. Dunn

knew I was a real estate agent at the time of the conversation above mentioned. I was then renting an office from him. I was selling real estate on commission.''

The plaintiff was corroborated by another witness. The defendant also testified in the case, and denied having used the language attributed to him by the plaintiff. He also testified, that the plaintiff had previously applied to him for employment to sell the property, and had been refused. This the plaintiff in his testimony did not deny.

The jury having found in favor of the plaintiff, we must take his testimony as to the conversation between the parties as the true version of the transaction. The question presented for our consideration is, did the language employed by the defendant, as testified to by the plaintiff, constitute an offer by the defendant to pay the plaintiff a commission for procuring him a purchaser of his property at the price mentioned? We think not. "If A, being a capable person, so bears himself towards B that a reasonable man in B's place would naturally understand A to make a promise, and B does take A's words or conduct as a promise, no further question can be made about what was passing in A's mind." Pollock's Prin. of Con., 4. So, as applicable to the person to whom a proposal is made, Mr. Justice Blackburn lays down the following rule: "If, whatever a man's real intention may be, he so conducts himself that a reasonable man would believe that he was assenting to the terms proposed by the other party, and that other party upon that belief enters into the contract with him, the man thus conducting himself would be equally bound as if he had intended to agree to the other party's terms." Smith v. Hughes, L. R., 6 Q. B., 607. These extracts indicate the general rule, which is applicable to such cases. But it would seem that when words are relied upon as making an offer of compensation for doing an act, and the parties at the time stand face to face, the intention to make the offer should be manifested in the language used at least with reasonable certainty. If there be reason to doubt the import of the words, the doubt under such circumstances may be easily resolved by appropriate inquiry on the part of him to whom the supposed offer is made.

There was no express promise to pay anything in this case; nor do we think that one can be clearly implied from the language used. If one requests another to perform a service for him, the law will ordinarily imply a promise to compensate him for the work. But when one having property to sell tells a broker that if he will bring him a purchaser he will sell at a certain price, it is by no means certain that he intends to imply a promise to pay a commission. The broker may get his compensation from the purchaser. In this case the defendant did not authorize the plaintiff to sell his property; nor did he employ him to sell it. He merely said to him, in effect, that if he would bring him a purchaser he would show him that he would sell for the

sum of $30,000. Can it be said that it is clear that the defendant did not expect him to get his compensation from the purchaser whom he might procure? That such was his intention (if indeed his language was anything more than mere idle banter) is shown by the fact that his language was, that he would take $30,000 for the property, and that there is not an expression in it to indicate that he was willing to take that sum less a commission for selling. This conclusion is strengthened by the further fact that he had previously declined to employ the plaintiff to make the sale.

"If a dispute should arise as to the terms of a contract made by word of mouth, it is necessary in the first instance to ascertain what was said, and the circumstances under which the supposed contract was formed. These would be questions of fact to be determined by a jury. When a jury has found as a matter of fact what the parties said, and that they intended to enter into a contract, it is for the court to say whether what they have said amounts to a contract, and if so, what its effect may be." Anson on Con., 313. It follows that when, as in this case, after viewing the transaction in the light most favorable to the plaintiff the conclusion is reached that the language used does not justify the inference that a contract was made, it is the duty of the court to instruct a verdict for the defendant.

The charge of the court is a very lucid and admirable presentation of the law as applicable to a proper case; but we think the evidence did not justify a submission of the issues made by the pleadings, and that the court should have directed a verdict for the defendant.

The judgments of the Court of Civil Appeals and of the District Court are accordingly reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 26, 1894.