YOAKUM v. GOSSETT. (No. 1277.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 23, 1918.)

1. WORK AND LABOR ⬦4(2)—IMPLIED PROMISE.

Where one performs valuable services for another and the latter expresses no dissent or avails himself of the services, a promise to pay the reasonable value of the services is implied.

2. WORK AND LABOR ⬦4(2)—IMPLIED PROMISE.

A promise will not be inferred where there are facts wholly inconsistent with the contract to be implied or where an express promise would be contrary to law.

3. WORK AND LABOR ⬦4(2)—IMPLIED PROMISE.

Not every request for, or acceptance of services on the part of another will imply an intent to pay therefor.

4. BROKERS ⬦67(1)—ACTING AS AGENT FOR BOTH PARTIES.

A broker cannot, without the consent of both parties, act as agent and receive compensation from both for the same transaction.

5. BROKERS ⬦67(1) — ACTION FOR COMMISSION—IMPLIED PROMISE TO PAY.

Where a broker was employed by one party to the trade, the fact that the other secured a benefit from the broker's services in the sale of its own property would not authorize an inference that there was an implied promise on the part of the other to pay a commission.

6. BROKERS ⬦67(1) — ACTION FOR COMMISSION—CUSTOM.

That there was a custom that each party to an exchange pay 2½ per cent. commission on his property would not authorize a recovery of a broker's commission from a party to a trade who knew nothing of the custom.

7. CUSTOMS AND USAGES ⬦15(1)—CONTRACTS —CONSTRUCTION.

An established or notorious custom or usage with reference to the subject-matter of a contract may be shown for the purpose of construing a contract and determining the right of the parties with reference to matters in regard to which the contract is silent.

Error from Wheeler County Court; L. D. Miller, Judge.

Suit by F. E. Gossett against S. H. Yoakum. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

R. H. Cocke, Jr., of Wellington, and A. M. Mood, of Amarillo, for plaintiff in error. J. B. Reynolds, of Wheeler, for defendant in error.

BOYCE, J. F. E. Gossett, defendant in error, brought this suit against S. H. Yoakum, plaintiff in error, to recover a broker's commission. Plaintiff sues as the assignee of the claim of F. G. Ford, and alleges that said Ford was employed by one Newberry to sell a certain 1½ section of land in Wheeler county, and was offering to sell the same to the defendant Yoakum, and in the course of the negotiations the defendant, Yoakum, offered to buy the same at a price satisfactory to the said Newberry, provided that in said deal said Newberry would accept a stock of goods owned by said Yoakum, at a named price, to be credited on the purchase price of the land, and that after sundry negotiations between Yoakum and Newberry, participated in and promoted by the said Ford, the said trade was closed; that the said Ford and the defendant Yoakum agreed, with the sanction of the said Newberry, that said Ford should receive as compensation for his services to the defendant, in assisting in the disposition of said stock of merchandise, a commission amounting in the aggregate to the sum of $265. Plaintiff further pleaded that under such conditions as above set forth the said Ford, at the instance and request of the defendant, performed such services for him, and that the defendant accepted the same, and thereby became bound to pay the said Ford the reasonable value thereof, which was alleged to be the sum of $265.

The testimony shows that Yoakum came to Wheeler county to look at land, and that Ford, as the agent for Newberry, showed him the land described in plaintiff's petition, stating price, terms, etc. During this time Yoakum proposed to buy the land if he could put in as part payment a stock of goods owned by him, located at Dodsonville, Tex., where Yoakum resided at the time. Nothing was said between the parties as to Yoakum paying any commission to Ford on the transaction, or receiving any compensation from Yoakum in the event the trade was consummated. Ford turned Yoakum over to Newberry, and they completed the transaction. Under the terms of Newberry's employment Ford was to receive 2½ per cent. commission on the sale of lands brought about by him, whether paid for on a money basis or other property was taken in exchange, and in this particular instance Newberry paid Ford the commission according to agreement. There is some testimony that there was a general

custom in Wheeler county that 5 per cent. commission was paid on the sale of real estate made on money terms, and that when an exchange was made this was divided, each party paying 2½ per cent. on his property and the party having the excess in the exchange paying 5 per cent. on such excess. Some of the witnesses examined did not know of such custom, and defendant expressly denied having any knowledge thereof. The jury found that there was no contract for payment of commissions as alleged, but answered the following issue in the affirmative:

"Has the plaintiff shown by a preponderance of the evidence that F. G. Ford made a sale to said Newberry of the stock of goods at the instance and request of the defendant, S. H. Yoakum, and did the defendant accept the benefit of such services?"

They further found that the value of such services was $190, for which amount judgment was entered for the plaintiff.

[1-5] The first assignment of error complains of the refusal of the court to give a peremptory instruction for the defendant. We think this assignment must be sustained. In order for plaintiff to recover there must have been a contract of employment, express or implied. There was certainly no express contract of employment shown. Can such a contract be implied from the circumstances as we have briefly stated them? "Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract. * * * Thus, where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service, a promise to pay the reasonable value of the service is implied. * * * A promise will not be inferred where there are facts wholly inconsistent with the contract to be implied, or where an express promise would be contrary to law. Both express contracts and contracts implied in fact are based on consent." R. C. L. vol. 6, pp. 587, 588; C. J. vol. 9, p. 556; Elliott on Contracts, § 1358; Clarke on Contracts, 2429; 9 Cyc. 242. In order to establish an implied contract on Yoakum's part to pay Ford for his services in the transaction, it must appear that the services were rendered under such circumstances as that it may be fairly inferred that it was the intent of the parties that Yoakum should pay for such services. Dunn v. Price, 87 Tex. 318, 28 S. W. 681; Ballentine v. Mercer, 130 Mo. App. 605, 109 S. W. 1040. It is not every request for or acceptance of services on the part of another that will imply an intent on the part of the beneficiary to pay therefor. Bonner v. Bradley, 14 Tex. Civ. App. 234, 36 S. W. 1014; Schrimpf v. Settegast, 36 Tex. 301. In this case Yoakum was dealing with Ford as the agent of his adversary in the trade. Ford, as a matter of law, could not, without full knowledge and consent of the parties, act as agent and receive compensation from them both in the transaction. C. J., vol. 9, pp. 568-576; Keitt v. Gresham, 174 S. W. 884; Hill v. Patton, 160 S. W. 1155; Moore v. Kelley, 162 S. W. 1035. The relation of the parties was such, therefore, that a contract on the part of defendant, Yoakum, to pay Ford for his services would be a breach of good faith, and illegal, unless it was shown that Newberry had consented to allow his agent Ford to act for and receive commission from the purchaser. Yoakum, therefore, had the right to assume that Ford was being paid by his employer, Newberry; and, while the said Yoakum incidentally received a benefit from the services in the sale of his own property, no contract to pay therefor can be legitimately implied from such facts.

[6, 7] The evidence as to the custom above referred to does not affect this conclusion. If the custom was to divide commission, Ford had no claim here because he has received his full commission under the contract with his initial employer. But, if the custom applied to the facts of this case, it would not be sufficient to justify a recovery by Ford, because there was no evidence that such custom was known to the defendant, Yoakum. The law of usages and customs in relation to contracts is usually applied in the interpretation and construction thereof. An established or notorious custom or usage with reference to a particular trade or subject-matter of a contract may be shown under proper pleading for the purpose of construing the contract and determining the right of the parties under the contract with reference to matters in regard to which the contract is silent. Schmitt v. New Braunsfelser Unterstuetzungs Verein, 32 Tex. Civ. App. 11, 73 S. W. 568; O. M. Insurance Co. v. Reymershoffer Sons, 56 Tex. 234; Schaub v. Dallas Brewing Co., 80 Tex. 634, 16 S. W. 429. And it is sometimes said that a contract itself cannot be established by custom. 12 Cyc. 1083, and authorities cited. However that may be, bearing in mind that the question as to whether or not there was an implied contract on the part of Yoakum to pay Ford for his services in consummating the trade must be determined by the rules hereinbefore stated, it is clear that before an intention on the part of Yoakum to pay Ford for such services may be fairly implied, it must be shown that Yoakum had knowledge of such custom, which was not in accordance with the general principles of law that would regulate the transaction. While a custom may be shown to be so long established and general in its application that it affords presumptive evidence that the parties knew of its existence, though even then in a case of this kind it could not be conclusive, the proof in this case falls short of this showing, and there is no other evidence of knowledge on the part of the defendant of

such knowledge, and he expressly denies knowledge thereof.

For these reasons we think the case must be reversed and remanded.

HUFF, C. J., not sitting, being absent in Austin, with committee of judges passing on applications for writs of error.