## WILLIAMS & JONES v. GOULDY.
### (No. 1930.)

(Court of Civil Appeals of Texas. Amarillo. March 22, 1922.)

1. Brokers ⬅88(2)—In a broker's action for commission, evidence held to have raised a jury issue as to there being an agency contract.

In a broker's action for commission on the sale of a stock of merchandise, evidence *held* to raise an issue as to whether there was any agreement of agency which should have been submitted to the jury.

2. Brokers ⬅40—To entitle a broker to commissions he must show an agency contract.

To entitle a broker to recover commissions for effecting a sale he must show that he was employed by the owner or some one for him, and a mere volunteer or one without authority, in absence of ratification, is not entitled to commissions.

3. Brokers ⬅40—Implied contract by seller is sufficient for recovery of commissions.

There need not be an express contract between the broker and seller to entitle the former to his commissions, for an implied contract is sufficient.

Appeal from Floyd County Court; W. B. Clark, Judge.

Suit by F. B. Gouldy against Williams & Jones. Directed verdict for the plaintiff, and the defendants appeal. Reversed and remanded.

Austin C. Hatchell, of Plainview, for appellants.

Kinder, Russell & Griffin, of Plainview, for appellee.

HALL, J. [1, 2] The appellee Gouldy, a real estate broker, sued the appellants to recover $277.45, alleged to be due him as commissions for the sale of a stock of merchandise, and some store fixtures belonging to appellants. He sues upon a contract of listing, and in the alternative seeks to recover 5 per cent. commissions upon quantum meruit. A further statement of the pleadings is unnecessary in view of the disposition made of the appeal. The case was tried to a jury, and, after both sides had closed in the introduction of testimony, the trial judge directed a verdict for the plaintiff. This action of the court is challenged by the appellants, who also insist that the court should have instructed a verdict for them. The evidence shows that the appellants and the purchaser, one Woodall, entered into a binding contract for the sale of the property; that Woodall made the cash payment, and that subsequently, by agreement of the parties, the sale was rescinded. We will not undertake to discuss in their order the six different propositions urged, and will dispose of the entire case by a general discussion under that proposition in which it is insisted that the court erred in directing a verdict for plaintiff. We think this action of the court was error. In so holding we must, of course, consider the case from the appellant's standpoint. The statement of facts shows that Williams & Jones were conducting a mercantile business at Floco, in Floyd county; that F. B. Gouldy was a real estate agent at Plainview. The transaction which gave rise to this suit is stated by Robert E. Jones, one of the partners, who had the management of the business, as follows:

"I am acquainted with the plaintiff, F. B. Gouldy, having met him for the first time when he came to our place of business with a man by the name of W. H. Woodall, being the day I signed a contract with Mr. Woodall for the sale of our business. Some time in July, 1920, a Mr. Tom Bond came to our store and told me that a Mr. F. B. Gouldy, who I later learned is the plaintiff, had told him that he had a friend who would likely be interested in buying our store, and that if we wanted to sell it to write Mr. Gouldy the price and terms. At this time I had never met Mr. Gouldy, and Mr. Bond did not tell me that Mr. Gouldy was a real estate man or didn't tell me that Mr. Gouldy would expect a commission if we sold the store to the man he had. Mr. Bond told us to write to the Gouldy Realty Company. I didn't know that Mr. Gouldy was in the real estate business, but I presumed that he was by it being the Gouldy Realty Company. I really supposed at the time I wrote Mr. Gouldy that he was in the real estate business. I wrote the letter dated July 8, 1920, and addressed to Mr. Gouldy. It is in my handwriting, and I signed the same Williams-Jones, Floco, Tex. That letter is as follows: 'Mr. Bond was just telling me that you thought you had a man who would buy our business here, and that you asked him to have me write you and let you know about what the stock would invoice. The stock I would judge will invoice around $6,500; then comes the fixtures, and we also have a five-room residence. We will sell all, and if you have some one that is interested bring them down. Everything is mighty good around here. Let us hear from you.'

"Some time the latter part of June, 1921, Mr. Gouldy called me over the telephone from Plainview, and asked me if we still wanted to sell our mercantile business. I told him that we would sell, and he then said that he had a man who might be interested in buying, and I told him to bring him on down. Mr. Gouldy came down either that or the next day with Mr. W. H. Woodall. He introduced himself to me and introduced Mr. Woodall, and told me that he thought Mr. Woodall was interested in buying the store, and for me to show him through. He told me that I could rely upon anything Mr. Woodall said. This was the first time I had met Mr. Gouldy or Mr. Woodall. Mr. Gouldy never did bring any other party to our store that I know anything about. If he ever brought Mr. Sewell there I didn't know anything about it. I remember Mr. Davis being there at one time to look it over. Mr. Gouldy

never did call me over the telephone but once, and that was just before he brought Mr. Woodall to the store. I never did have a letter from him until after the contract was signed. I signed the contract which you have on June 30, 1921. Mr. Woodall also signed the contract. Mr. Gouldy wrote me on July 21, 1921, as follows: 'Please send us a check for the commission in the deal of your stock of goods to Mr. Woodall and oblige.' I answered on the bottom of that letter as follows: 'We had not listed our stock with you for sale, and do not owe you any commission. If you worked up a deal you did it for Mr. Woodall, and you will have to look to him.' I further wrote him on July 25th, in substance, that he was looking to the wrong parties for commissions; that we had not made any deal with him to sell us out; that I didn't know what his deal with Woodall was, but I knew that Woodall was expecting to pay him a commission, as Woodall had asked me what I thought he would charge him as commissions on the deal. He told me he didn't mind paying Gouldy something, but he didn't think he ought to expect a straight commission."

On cross-examination he testified:

"I never did authorize the plaintiff or any one else to sell our stock of goods and fixtures. We were selling the stock at cost price, and were not willing to pay a commission on it. I didn't know that the plaintiff was expecting a commission at the time I signed the contract, or I would not have signed it, agreeing to sell as we did. I supposed Mr. Gouldy was representing Mr. Woodall. If I had known Mr. Gouldy was expecting a commission I would not have sold the stock."

Appellant Jones testified on re-examination substantially to the same effect. Since the judgment must be reversed, it is not proper for us, in view of another trial, to discuss the effect and weight of this testimony. We will say, however, that it raised an issue which should have been submitted to the jury, and in the opinion of the jury the case may have fallen within the rule announced in Dunn v. Price, 87 Tex. 318, 28 S. W. 681, and several later cases by the courts of this state, in which the Dunn-Price case is cited as authority. The rule there announced is stated in the note to Geier v. Howells, 27 L. R. A. (N. S.) 787, as follows:

"It will doubtless be universally conceded that, to entitle a broker to recover commissions for effecting a sale of real estate or other property, it is indispensable that he should show that he was employed by the owner, or some one for him; in other words, that a mere volunteer, or one who without authority effects the sale of property, in the absence of ratification, is not entitled to recover commissions.

"It follows that a broker who brings to an owner of real property a customer and subsequent purchaser, without previous request from the owner, and does not inform the latter that he is acting as his broker, is not entitled to commissions upon the sale [citing authorities].

So, it has been practically universally held that the mere asking and receiving the price of property does not of itself make the broker the agent of the owner, entitling him to commissions, although he finds a purchaser, or the owner subsequently disposes of the property to one with whom the broker had negotiated [citing authorities]."

[3] We do not intend to hold that there must be an express contract between the broker and the seller in order to entitle the former to his commissions. Both Gouldy and Reedy, who it seems was indirectly interested with Gouldy in the deal, testified that there was no express contract, and that the matter of commissions was never mentioned to either of the appellants until after the deal was closed. The case is, of course, one of implied contract, if it should appear that the appellee is entitled to recover at all. Appellants ask if the judgment is reversed that it be rendered for them. Without quoting the testimony of Gouldy at length, we think his statement of the transaction is probably sufficient to raise the issue of implied contract. Further than this we will not express an opinion as to his evidence. Because the court directed a verdict, the judgment is reversed, and the cause remanded.