**SECURITY STATE BANK OF PEARSALL v.
CUNNINGHAM.** (No. 287.)

Court of Civil Appeals of Texas. Eastland.
April 1, 1927.

Rehearing Denied June 17, 1927.

**1. Brokers ⊙═85(7)—Bank's telegram to real
estate broker, reciting offer from another
broker and directing addressee to close deal,
held inadmissible on question whether broker
making offer was entitled to commission.**

Bank's telegram to real estate agent with
whom its property was listed, reciting an offer
received from another agent with whom the
property had previously been listed by bank's
predecessor, and directing agent to close deal
if possible, *held* inadmissible on question whether
agent making offer was entitled to commission
from bank on sale.

**2. Appeal and error ⊙═931(6)—Where record
affirmatively shows that court considered in-
admissible testimony, its action will be re-
viewed, regardless of presumption, as if tes-
timony had been admitted to jury.**

It is ordinarily presumed that court hearing
case without jury does not consider inadmissible
testimony admitted, but, where record affirma-
tively shows the contrary, court's act will be re-
viewed on same basis as if testimony had been
admitted to jury.

**3. Appeal and error ⊙═989—Appellate court,
weighing sufficiency of testimony, will consid-
er only admissible testimony.**

When an appellate court comes to consider
the sufficiency of testimony to support a judg-
ment, only admissible testimony can be con-
sidered.

**4. Brokers ⊙═40—Real estate broker, to be en-
titled to commission, must act under express
or implied contract.**

In order for a real estate broker to be en-
titled to a commission, he must act under an
express or implied contract with the owner to
procure for the owner a purchaser of the land
involved.

**5. Banks and banking ⊙═116(4)—Bank presi-
dent's knowledge of prior listing of land with
broker held not notice to bank succeeding to
former bank's assets.**

Where bank president, after engaging broker
to sell land for bank, resigned and later became
president of bank which succeeded to assets of
former bank, including the land previously list-
ed, *held* president's knowledge of prior listing
was not knowledge to the bank last owning land.

**6. Principal and agent ⊙═177(1)—Only knowl-
edge of agent acquired in course of principal's
business will be imputed to principal.**

Knowledge acquired by an agent, in order
to be imputed to his principal, must have been
acquired in the course of the principal's busi-
ness.

**7. Brokers ⊙═8(3)—Evidence held insufficient
to establish implied contract between bank
and broker for commission for sale of land.**

Evidence *held* insufficient to establish im-
plied contract between bank and real estate
broker to pay commission for procuring pur-
chaser for land.

**8. Brokers ⊙═86(8)—Evidence of value of real
estate broker's services held insufficient to
support recovery in action for commissions
under implied contract.**

Evidence that former bank had listed land
with broker under contract for 5 per cent. com-
mission *held* insufficient evidence of value of
broker's services in selling land to sustain re-
covery in broker's action for commission under
implied contract with bank which succeeded to
assets of bank making the former listing.

· Error from District Court, Comanche
County; Joe H. Edison, Judge.

Action by K. F. Cunningham against the
Security State Bank of Pearsall. Judgment
for plaintiff, and defendant brings error. Re-
versed and remanded.

Spencer & Rogers, of San Antonio, and
Jerome P. Kearby, of Comanche, for plaintiff
in error.

Callaway & Callaway, of Comanche, for
defendant in error.

PANNILL, C. J. The plaintiff in error will
be designated as appellant and the defendant
in error as appellee. The substance of the
testimony incorporated in the record is that
the People's State Bank of Pearsall, Tex.,
owned a tract of land in Comanche county
and listed the same for sale with the appel-
lee, who was a real estate broker. The ap-
pellee made a number of unsuccessful efforts
to find a purchaser for the property. The
People's State Bank became insolvent and
was taken over and its affairs administered
by the commissioner of banking. Appellee's
contract of listing was made with one Tricky,
at that time the president of the bank, who
acted for the bank in listing the land with ap-
pellee. Tricky resigned as president of the
People's Bank a short time before it became
insolvent, and after its insolvency purchased
its assets, including the land in Comanche
county, from the commissioner. Shortly
after this sale, the appellant bank was or-
ganized and by purchase or otherwise ac-
quired the assets of the defunct bank. There
is no testimony from any source that the ap-
pellant bank ever had any connection with or
relation to the defunct bank. The only evi-
dence bearing upon this question . was given
by appellant's witnesses, and their testimony
as stated was that there was no such con-
tract. The appellant bank, after its organiza-
tion, listed this land for sale with one Bur-
ton, another real estate broker of Comanche,
and Burton had made several efforts to sell

the land to Mr. Livisay, who finally became the purchaser, but the negotiations of Burton with Livisay were not productive of any substantial result. Livisay then stated to appellee, Cunningham, that he (Livisay) desired to purchase the land, but seemed to be unable to come to terms with Burton, and told appellee that he (Livisay) would give $40 per acre for the property. Appellee then addressed a letter to the People's State Bank at Pearsall, Tex. This letter came into the possession of the appellant bank. According to appellant's testimony, the letter was handed to it by the commissioner of banking. Appellant then sent to its agent, Burton, by telegraph, the following message:

"K. F. Cunningham offers forty dollars per acre. See him at once and make deal if possible. Pay commission on our equity, if possible. Wire me collect results."

At the same time he sent to appellee the following message:

"Offer received. See W. H. Burton at once. Have wired him."

The telegraph operator was unable to locate Burton, and, knowing Cunningham, called his attention to the message to Burton, and appellee read it. The telegram to Burton was delivered to him later, and the appellee saw Burton and told him of having read the message and of Livisay's offer. Burton renewed his negotiations with Livisay and finally procured a contract of sale signed by Livisay which was later performed by the appellant and Livisay. Appellant then paid a commission of 5 per cent. of its equity in the land to Burton, there being a prior mortgage on the land of approximately $6,800. Appellee, after demand upon appellant for the payment of the commission to him, brought suit and obtained judgment for 5 per cent. of the full value of the premises at $40 per acre. The only proof offered as to the value of appellee's services was the contract between him and the People's State Bank, wherein a commission of 5 per cent. was stipulated.

The trial was before the court without a jury. Several assignments are presented, but it is believed that a discussion of three propositions will dispose of all the matters which are considered controlling in the final disposition of the case, and they are: The admissibility of the telegram from the appellant to its agent, Burton, and, if the letter was improperly admitted and considered by the court, then whether there is remaining any testimony which would support a judgment for appellee under any theory for any amount, and, if there was, whether such testimony would authorize a recovery for the full 5 per cent. as was done in the judgment complained of.

[1] When the telegram was introduced, objection was made to it on the ground that it was not intended as a communication from appellant to appellee, but was intended only as a telegram of instruction to its agent, Burton, with no authority on the part of the telegraph company to deliver it to appellee. The bill recites that these objections were overruled, and the message was admitted and considered by the court in disposing of the case.

[2] Where the trial is before the court, it is ordinarily presumed that the court does not consider inadmissible testimony admitted in evidence, but, where the record shows affirmatively that the court did admit and consider inadmissible testimony, then his act in so doing is reviewed upon the same basis as if such testimony had been admitted to a jury. G. C. & S. F. Ry. Co. v. Bogy (Tex. Civ. App.) 178 S. W. 577.

The telegram objected to under the authorities dealing with this question, was not admissible.

No authority has been cited from our own appellate courts, but the cases of Potter et al. v. Hollister from the Court of Chancery of New Jersey, 45 N. J. Eq. 508, 18 A. 204, and Stengel v. Sergeant, 74 N. J. Eq. 20, 68 A. 1106, are called to our attention. In each of the cases referred to an attempt was made to prove a contract for the sale of real estate by letters of instruction from the owner to his agent, and the receiveableness of such testimony was denied upon the following ground: That letters written by a party to his agent cannot be used as evidence of the making of a contract by him, unless it appears that he intended the letter to his agent to be delivered to the party seeking to prove the contract and that a party's letters, addressed to or sent to his own agent, are not evidence of a contract with the third party. This holding is required by the fundamental law of contracts that the minds of the parties must meet and concur, and such meeting is not shown by introducing the instructions from one of the parties to his own agent, not addressed to a third party nor intended to be a communication to him. It is evident from the language of the telegram, addressed to Burton and quoted above, that appellant did not intend the telegram for Cunningham, because at the same time appellant sent Cunningham a telegram, instructing the latter to see Burton. Appellee, in his brief, relies largely, if not mainly, upon the telegram from Burton as evidence of an express contract with appellant for the sale of the land. The erroneous admission of this testimony would in and of itself reverse the case, but, inasmuch as serious complaint is made as to the sufficiency of the testimony, both as to liability and as to the amount allowed appellee of 5 per cent. on the full value of the property, it will be necessary to make a few brief observations on such matters.

[3] When an appellate court comes to consider the sufficiency of testimony to support

a judgment, only admissible testimony can be considered. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533.

[4] In order for a real estate broker to recover a commission, he must act under an express or implied contract with the owner to procure for the owner a purchaser of the land. Dunn v. Price, 87 Tex. 318, 28 S. W. 681.

[5-7] The only theory upon which either an express or implied contract could arise from the facts as recited, would be upon the ground that appellant had assumed the obligation of the contract made by its predecessor with the appellee. As stated, there is no evidence tending to show that it did, but on the contrary all the testimony adduced upon that point was from the witnesses for appellant, who specifically denied such assumption, and the burden was upon appellee to prove it. The fact that Tricky, who had made the contract with appellee, listing the land for the People's State Bank, was president of the appellant bank, would not bring knowledge home to the latter, as the rule is that knowledge acquired by an agent in order to be imputed to his principal must be acquired in the course of the latter's business. There is no testimony from appellee that the letter which he wrote to the People's State Bank in any manner referred to the contract he had with it listing this property. Eliminating the telegram from appellant to its agent, Burton, it is not believed that the letter to the People's State Bank, which came into the hands of appellant and in consequence of which appellant wired appellee that his offer had been received and see Burton, could be made the predicate for an implied contract.

These facts are not as strong as those under consideration in Dunn v. Price, supra. In that case the real estate agent approached the owner and asked him what he would take for his property, and the owner replied, stating a certain sum, and the agent then asked the owner if he was in earnest about taking that amount for his property, and the owner replied, if he did not think so, to send him a purchaser and see how quick he would sell for the price named. The broker then found a purchaser who bought the property at the price named, and this was held insufficient to create a contract, either express or implied, between the owner and the broker.

In the present case, the owner did not even direct the appellee to find a purchaser, but referred him to its agent. He does not claim that he made any contract with the agent, but rests his claim upon an express or implied contract with the appellant bank.

In order for appellee to predicate a recovery upon the transaction had between himself and the appellant without a showing that the appellant had assumed the contract made by

him with the People's State Bank, appellant, he should, upon the recipt of the telegram which plainly indicated that the property had changed ownership, informed appellant that he expected a commission from it for his services, and, if he had done so and appellant should have thereafter availed itself of the services of appellee, it would have been liable to him on an implied contract. It has therefore been concluded that the testimony, aside from the telegram from appellant to Burton, is not sufficient to sustain the judgment. Oxford v. Rogers (Tex. Civ. App.) 238 S. W. 295.

[8] There is another reason which would prevent the affirmance of a judgment on the basis of a recovery on an implied contract, and that is that there was no testimony introduced as to the value of appellee's services or as to the reasonable and customary commission charged by brokers for like services. As stated, the only evidence on that point was the agreement between appellee and the People's State Bank for a 5 per cent. commission. If this contract was not binding upon appellant, it would furnish no basis for the ascertainment of the value of appellee's services, based upon an implied contract.

Under ordinary circumstances, the views expressed above would lead to a reversal of the judgment and a rendition of the same for appellant, in this court, but, inasmuch as the appellee relied upon the inadmissible telegram to establish his case and his right to do so was concurred in by the learned trial judge, we have concluded to remand the case in order to give appellee an opportunity to prove, if he can, whether there was, in fact, any assumption by the appellant of the contracts and obligations of its defunct predecessor. The order of remand entered will be general, and will not restrict appellee in any future trial, except to conform to the suggestions herein made.

Reversed and remanded.