## SECURITY STATE BANK OF PEARSALL v. BURTON. (No. 478.)

Court of Civil Appeals of Texas. Eastland.
Oct. 5, 1928.

Rehearing Denied Nov. 2, 1928.

Callaway & Callaway, of Comanche, and Spencer & Rogers, of San Antonio, for appellant.

J. P. Kearby and G. E. Smith, both of Comanche, for appellee.

HICKMAN, C. J. . The Security State Bank of Pearsall, appellant, sued W. H. Burton, appellee, to recover the sum of $1,240, which it alleged was retained by appellee out of the sale price of a tract of land owned by appellant in Comanche county, and which was sold by appellee as agent or broker for appellant. In a trial before the court without the aid of a jury, judgment was rendered that appellant take nothing by its suit, and this appeal followed.

✗ During the year 1925 appellant listed the land for sale with appellee at $40 per acre, with the agreement that appellee should be paid a commission of 5 per cent. Appellant contended that the agreement was to pay 5 per cent. of its equity in the land. By the term "equity" it meant the total sale price, less the amount of incumbrance to be assumed by the purchaser. Appellee contended that the agreement was to pay him 5 per cent. of the total sale price. That dispute as to the terms of the original contract becomes immaterial, for the reason that, after the contract of sale had been made, a compromise on the amount of commission was agreed to by both parties, whereby appellant paid appellee $527.25, which was more than appellant claimed to owe, but less than appellee claimed was due him. This amount of money was accepted by appellee in satisfaction of the commission due under the contract.

The tract of land was thought to contain 358 acres, and appellee testified that, when it was listed with him by an officer of the appellant bank, this officer calculated the total agreed selling price by multiplying $40 by 358, making $14,320. The question of any possible excess or deficiency was not discussed. In December, 1925, appellee found a purchaser for the land and wired appellant as follows:

"Sold farm with half Mills royalty subject to title at forty an acre. Assumes Federal Loan principal, pays twenty five hundred cash, three thousand February second 1926, balance one and two years, eight per cent. Taxes paid. Wire confirmation and he puts up fifteen hundred forfeit."

Appellant promptly replied to this telegram, accepting the offer contained therein. Following the receipt of this reply from appellant, appellee and the purchaser, W. P. Levisay, prepared a contract of sale between appellant and Levisay in accordance with the telegrams, which contract was executed by appellant and the purchaser. A few days thereafter appellee wrote a letter to appellant, advising him that, while the contract called for the sale of the entire tract, yet the real trade was that the purchaser would not buy a small tract of about 8 or 10 acres lying east of a proposed highway running through the east edge of the land, and that in order to make the trade appellee himself had agreed with the purchaser to pay him $40 an acre for the small tract east of the highway, and receive from the county the amount which had been allowed for damages to the land by the highway. This letter further reads:

"* * * And that's the way the trade stands —you've sold the place to Levisay as per contract and I have bought the little strip east of highway west line at same price. * * * Have talked to two men today who both remember hearing me offer the place to Levisay at $40.00 per acre. Have covered everything I can think of."

. Following this a deed was executed by the bank to Levisay and sent by mail to Comanche. A few days later appellee went in person to Pearsall and presented a correction deed to appellant, which was properly executed by it, conveying the land to the purchaser. Before the execution of the correction deed by appellant, appellee had had the tract west of the highway surveyed and it was found to contain 389 acres. Appellee knew this fact when he took the correction deed to appellant for execution, but did not disclose the fact to appellant. It was on the occasion of this

visit that the agreement with reference to the amount of commission above mentioned was made, and appellant wrote its check to appellee for $527.25, sending it to a Comanche bank, to be delivered to appellee when the purchase price for the land was paid by the purchaser.

After the trade was closed, and appellant had received its money for 358 acres of land at $40 per acre, and had paid appellee the agreed commission, it received information from K. F. Cunningham that its agent, Burton, had collected from the purchaser $40 per acre for 389 acres, but had remitted for only 358 acres. Whereupon appellant called upon appellee for an explanation, and a few days later received from appellee a letter in which, for the first time, it was made known to appellant that by the terms of the side contract executed between the appellee and the purchaser it was agreed that appellee would have all the land west of the highway surveyed at his expense, and the purchaser would pay appellee $40 per acre according to the survey. Should the survey reveal a shortage, appellee should hold the purchaser harmless; but, should there be any excess above 358 acres, the purchaser would pay appellee therefor at the rate of $40 an acre. This letter further disclosed that the survey revealed an excess of about 30 acres, and that appellee had actually received from the purchaser $40 per acre of such excess. It appears elsewhere in the statement of facts that the exact amount of the excess was 31 acres, and that appellee actually received from the purchaser $1,240 therefor. It also appears that this excess was in addition to the 8 or 10 acre strip east of the highway, which appellee received. The total commission received by appellee was the sum of $527.25 cash paid him by appellant as commission, $1,240 paid him by the purchaser; whatever sum of money (not disclosed by the record) that was paid by the county for damages for running the highway across the land, and a strip of 8 or 10 acres of land east of the highway. The suit, however, was for the recovery only of the sum of $1,240 received by appellee from the purchaser.

■■ We have studied the findings of fact and conclusions of law contained in the record, to determine the theory upon which the judgment was rendered. One theory seems to have been that appellee acted in perfect good faith in entering into the side contract, and by doing so benefited appellant by securing for it a purchaser of its land at its quoted price of $14,320. We cannot agree to this conclusion of the trial court. Appellee did write to appellant, after the sale had been concluded and he had received his commissions, that:

"I acted fairly as I saw it and as I now see it. * * * I feel a perfectly clear conscience for I have always put your business before mine. * * * I gambled and I am glad I won instead of lost."

But appellant's legal rights are not to be measured in terms of appellee's conscience. The law has fixed a very definite and invariable standard governing the conduct between an agent and his principal, and it is our duty to measure appellee's conduct by that standard, and apply thereto the legal consequences. That standard is so well known as to require no citation of authority. This court, in the case of Raper v. Parmenter, 1 S.W.(2d) 343, defined it in this language:

"There is no more familiar principle of law than that an agent cannot either directly or indirectly have an interest in the sale of the property of his principal which is within the scope of his agency, without the consent of the principal, freely given, after having full knowledge of every matter which might affect such principal."

Viewing appellee's conduct in the light of this standard, we find that he wrote appellant on December 9th, before the deed was executed, informing it of an agreement between himself and Levisay, the purchaser, whereby he (appellee) was to purchase the small tract east of the highway and take the money which had been allowed by the county for the road. In that letter appellee stated to his principal that "have covered everything I can think of." No mention was made in that letter of the further terms of the agreement which he had with the purchaser, whereby he was to be paid for any excess. The facts further reveal that later appellee in person took a correction deed to appellant for its execution, and then negotiated for the collection of his commission, and actually procured the writing of a check for the agreed amount, knowing at that time that he was to receive $1,240 personally from the purchaser, without revealing this information to his principal. Our conclusion from these undisputed facts is that appellee did not freely and fully disclose to appellant every fact connected with the transaction which affected appellant, but that, without appellant's knowledge and consent, and without any agreement to that effect, appellee has profited by the transaction at appellant's expense. This he is not and should not be permitted by law to to.

■ The contention of appellee, that appellant had contracted to take the lump sum of $14,320 for the land, and, having received that sum, less the agreed commission, it should not be heard to complain, is overruled. The sale was for $40 per acre, and the agreement to take $14,320 for the tract was made on the assumption that it contained only 358 acres. Appellee's contract with appellant entitled him to only 5 per cent. of the sale price as a commission, and under that contract he would not be entitled to retain more than 5 per cent. of the sale price, regardless of whether it exceeded the lump sum named. Turnley v. Micheal (Tex. App.) 15 S. W. 912; Kramer v. Winslow, 130 Pa. 484, 18 A. 923, 17

Am. St. Rep. 782; Kerfoot v. Hyman, 52 Ill. 512; 9 C. J. 538.

■ The findings of fact and conclusions of law reveal that another theory upon which judgment was rendered for appellee was that, since appellee, by his letter written to appellant before the deed was executed, disclosed to appellant that he was a copurchaser of the land with Levisay, such knowledge on the part of appellant put it on notice that appellee might profit thereby and therefrom. Whereupon it became the duty of appellant to pursue the inquiry further, and that, had it pursued such inquiry, it would have discovered all of the terms of the side contract between appellee and the purchaser Levisay. No such duty rested upon appellant. It had the right to rely implicitly upon the good faith of its agent, and owed no duty whatever to investigate the acts of its agent, in order to determine whether such agent was truly representing it. In this case this contention of the appellee is made still less tenable by the fact that in his letter to appellant, written before the deed was executed, informing it of the terms of his contract with the purchaser, he failed to state anything regarding his prospective profits in the trade, and then concluded his letter with these words: "Have covered everything I can think of." To allow him to profit by appellant's failure to investigate his contract with Levisay after he had thus written appellant is manifestly insupportable.

■■ Another ground upon which the judgment of the trial court was based is disclosed in the court's conclusion of law No. 4, as follows:

"That plaintiff has acquiesced in and ratified the acts of defendant in connection with said sale, upon full knowledge and notice, and induced defendant to act thereon, to his prejudice, and is now estopped from asserting any claim against defendant, growing out of the same."

Briefly the facts upon which this plea of estoppel was based are as follows: After appellant was fully advised of the side contract between appellee and the purchaser, and had been furnished with a copy thereof, one K. F. Cunningham sued it for a commission for negotiating the sale of this land to Levisay. See Security State Bank of Pearsall v. Cunningham (Tex. Civ. App.) 296 S. W. 678. That when appellant was served with citation in that cause it requested appellee to assist it in defending the suit and pay the attorney's fees therefor. That appellee did pay one-half of such attorney's fees, and did assist appellant in defending that suit. That an officer of the appellant bank came to Comanche on the occasion of the trial of that suit, and there associated with appellee and cooperated with him in the defense thereof, without mentioning the claim against him asserted in this suit. We fail to see any elements of estoppel in these facts, nor in the further fact that appellant waited more than

a year to file the instant suit. The statutes of limitation fix the only limit of time in which a creditor may sue his débtor, and the creditor cannot be prejudiced by delay, provided he bring his suit within such statutory period.

The case has been fully developed. By appellee's own evidence, judgment should have been rendered against him for the amount prayed for. It is therefore our order that the judgment of the trial court be reversed, and that judgment be here rendered in favor of appellant against appellee for the sum of $1,240, with 6 per cent. interest thereon from January 3, 1926, to this date, together with all costs incurred in this court and in the court below.

Reversed and rendered.