**COGGIN v. BURSOM et al.**

No. 2968.

Court of Civil Appeals of Texas. El Paso.
March 22, 1934.

Rehearing Denied April 12, 1934.

Lea & Edwards, of El Paso, for appellant.

Robert E. Stalcup, of Dalhart, and Del W. Harrington, of El Paso, for appellees.

WALTHALL, Justice.

J. W. Bursom and W. L. McIntosh, plaintiffs in the trial court, brought this suit against T. J. Coggin, defendant, to recover a commission alleged by plaintiffs to be due them for the sale of land belonging to Coggin in the state of New Mexico.

Defendant Coggin answered by general denial, specially denied any listing of the land

for sale with plaintiffs, and denied that plaintiffs were the procuring cause of the sale of the land.

The case was submitted to a jury on special issues, and on the jury's findings judgment was rendered for plaintiffs.

## Opinion.

We will designate the parties respectively as plaintiffs and defendant as in the trial court.

Defendant submits that at the close of the evidence the court should have directed a verdict in his favor as requested, because (a) the pleadings and the evidence are insufficient to show a contract to pay any commission for the sale of the land; (b) the evidence fails to show that plaintiffs, or either of them, were the procuring cause of the sale.

Omitting the formal parts of plaintiff's petition, briefly stated, it is alleged in substance:

Paragraph 2: The defendant on or about the 15th day of May, 1931, placed and listed his said ranch with plaintiff Bursom, as a real estate agent, at the gross price of $35,-000, a part to be paid in cash and part to be paid in deferred payments.

Paragraph 3: That it was thereby impliedly agreed and understood that, if plaintiff should obtain a puchaser for the defendant and bring about and cause a sale for the defendant of the ranch for said sum of $35,000, that defendant would pay to plaintiff, as compensation for his services as such broker, the usual and customary commission for such services, which was and is the sum of 5 per cent. of the selling price of said ranch, or the total sum of $1,750.

Paragraph 4: That plaintiff did on or about the 15th day of June, 1931, acting with and through his subagent, McIntosh, procure for defendant a purchaser for said lands in the person of E. O. (Ted) Houton and wife, Martha Shelton Houton, at the price of $35,-000, a part to be paid in cash and a part in deferred payments; said Ted Houton and Martha Shelton Houton then and there did in fact purchase said land at said price and on said terms.

Paragraph 5: That at the time of listing said ranch for sale and at the time of sale there was no specific contract made between plaintiff and defendant as to the amount of commission to be paid by defendant in the sale of said ranch, but plaintiffs allege that the usual and customary compensation paid by owners of lands to agents in making sale of same in the locality was the sum of 5 per cent. of the selling price of the land sold, and that it was impliedly agreed by and between such parties in the event of such sale that the defendant would pay plaintiff the usual and customary commission prevailing in such locality at such time, and that, in the absence of a specific contract for a commission, plaintiffs were entitled to the usual and customary commission.

Paragraph 6: Plaintiffs have performed all duties and services in the premises and earned such commission; defendant has failed and refuses to pay plaintiffs, to their damage, $1,750.

Paragraph 7: Pleads in the alternative that, if plaintiffs should be mistaken that the sale of defendant's ranch was made by plaintiff Bursom, then plaintiff alleges the fact to be that on the date stated defendant listed his said ranch for sale with plaintiff Bursom as his agent for the sale of said ranch, and that defendant impliedly agreed and promised to pay plaintiff the usual and customary commission for the sale of real estate in that locality.

Paragraph 8: That, in pursuance of such contract, Bursom enlisted the aid of coplaintiff, McIntosh, in procuring a purchaser of said ranch, and that plaintiffs, one or both, procured Ted Houton and wife as purchasers, and tendered them to defendant as purchasers, that defendant accepted them as such purchasers, and accepted the benefit of the services of plaintiffs, and defendant thereafter did execute his deed of conveyance to said ranch to said Houton and wife, who paid defendant therefor said sum of $35,000 partly in cash and partly in deferred payments.

Paragraphs 9 and 10 pleaded similarly to the first count to the effect that plaintiffs were the procuring cause of the sale of said ranch; that, while there was no specific contract as to the amount of commission to be paid, the sum of 5 per cent. of the selling price was impliedly agreed upon, and a reasonable commission to be paid for the service in making such sale.

At the close of the evidence, defendant filed a motion for an instructed verdict non obstante veredicto in his favor. The record shows no action of the court on the motion.

On special issues submitted the jury found:

(1) On or about May 15, 1931, defendant, Coggin, "employed or authorized the plaintiff, J. W. Bursom, to find a purchaser for his ranch, described in his petition."

(2) Subsequent to such employment, plaintiff Bursom employed McIntosh to effect the sale of the Coggin ranch.

(3) Subsequent to the employment of Bursom by Coggin, plaintiffs "made an effort to cause the sale of defendant Coggin's ranch to Martha Shelton Houton."

(4) Such efforts of plaintiffs were the procuring cause of the sale of defendant's ranch to Martha Shelton Houton.

■ The record does not show any action by the court on any demurrer to plaintiffs' pleading, so "we must accord to the allegations of the petition every reasonable intendment in favor of the right sought to be enforced." S. L. S. W. Ry. Co. v. Spivey, 97 Tex. 143, 145, 76 S. W. 748, 749.

A brief summary of the evidence in considering its sufficiency to justify the submission of the issues to the jury is all that is necessary, and in doing so we may consider only such of the evidence as tends to support the jury's findings.

Plaintiff Bursom testified: "I was sitting there in the lobby (De Soto Hotel at Dalhart, Texas) and I saw Mr. Coggin come in the door, which enters in the northwest corner of the lobby; he walked in a little piece and was looking around, looked like he was looking for somebody. I got up out of my office and went and met him, shook hands with him, passed a few words, the time of day and such things as that; my main business was to ask him about his ranch, if he would sell his ranch, and he said he would; he said he hadn't been wanting to sell it, but he would make up his mind to sell; he couldn't sell his place in El Paso and wanted to sell the ranch. I told him if he would list it with me, I thought I had a buyer. He said all right he would give me a listing; he wanted $35,000.00 for the ranch as a whole. I says, 'Mr. Coggins, how much have you got in the ranch?' He began to tell me; I got an old envelope out of my pocket and wrote it down; he said, 'I own 3000 acres and have got 19,000 state lease; and I asked him about the terms; he says, 'I want all the cash I can get and make the other agreeable;' and he told me he had about 300 cows on the ranch; I asked him if they were tied down, he said no, he could move them, lease ground and put them on, and give possession most any time. So I made a memorandum on an old envelope and he didn't talk very long, visited a little while and went out."

The evidence shows that plaintiff Bursom at that time was, and for many years prior thereto had been, in the cattle commission business, and selling cattle and ranches at Dalhart; had an office or desk in the lobby of the De Soto Hotel at Dalhart. Bursom, short-

ly after the above conversation with Coggin, transferred the information given him by Coggin to a memorandum book in which he "put such things as that down in." Identified the memorandum book with notation, and it was admitted in evidence showing date "May 16th, 1931."

Bursom further testified: Plaintiff McIntosh was engaged with him (Bursom) in the sale of land and cattle; talked with him with reference to the Coggin ranch, that he had it for sale, giving him the terms. The Coggin ranch was later sold to Ted Houton and wife. Later Bursom and McIntosh had a conversation with Coggin at the Coggin ranch, and in which Coggin refused to pay any commission for the sale of the ranch.

W. L. McIntosh, plaintiff, testified: Is jointly interested in the live stock and real estate business with Bursom; knows Ted Houton and wife; prior to the sale of the Coggin ranch witness met Ted Houton at the De Soto Hotel; Henry Mooney was with him; Houton told witness McIntosh to show Mooney a ranch or ranches, and to see if he (McIntosh) could suit Mooney; and if he could, he (Houton) would try to buy it if it suited him too. McIntosh then took Mooney and during some two months showed him over several ranches, naming them; showed him the Coggin ranch. Found Coggin at the ranch and said to him: "I brought Mr. Mooney down here to look at this ranch through a listing you gave Jim Bursom." He said: "What did he price it at?" "I said: '$35,000.00 flat.'" "He said: 'That is right.'" Mooney and Coggin's son rode over the ranch that afternoon. During McIntosh's stay at the ranch he told Mr. Coggin that Houton was the real purchaser. He advised Mr. Coggin that Henry Mooney was to look at the ranch, and, if it appealed to Mooney, Ted Houton would buy the ranch. Henry Mooney told Mr. Coggin he would get Ted Houton to come down, and, if it appealed to Ted Houton, he (Houton) would buy it. Would come back with Ted Houton right away; come to inspect it himself and try to buy it. Went to Houton's ranch next day. Did not see Houton any more before the ranch deal was made. Mooney told witness he had talked it over with Houton, and they were going next day to look it over.

Witness Bursom recalled and testified to a custom prevailing in that part of the Panhandle and New Mexico as to the amount of the commission to be paid for the sale of real estate, 5 per cent. on the selling price.

Henry Mooney testified: Lived at Dalhart; knows all of the parties connected with this

transaction; met McIntosh and Houton at the De Soto Hotel in spring of 1931, and discussed with them the purchase of a ranch. McIntosh told him of the Coggin ranch. Houton told witness to go with McIntosh and look at ranches. Houton said the Coggin ranch was a good ranch, and said go and look at it. Spoke to him about the Coggin ranch before witness looked at it. Went with McIntosh to the Coggin ranch. McIntosh told Coggin we had come to look at the ranch. Coggin asked him what he had priced it at; McIntosh told him $35,000, and Coggin said "that was just right"; told him who wanted to buy it; that he (Mooney) had come and that Mooney and Houton were partners. Coggin said he was sure he could sell to Ted, said he knew Ted and knew Ted's father; witness looked over the ranch. Witness told Coggin he liked the ranch; that he would see Ted, and, if it suited him, witness thought Ted would buy it. Went with Houton to the Coggin ranch; went out with Oti and Dillard Coggin to look at the ranch; went back to the ranch and talked trade some more with Mr. Coggin. The negotiations resulted in the contract or sale of the ranch.

W. H. Latham testified by deposition: Is in the real estate business at Dalhart. "Int. No. 6: State whether there is now and has been for several years, a usual rule or custom in (a number of counties in Texas and New Mexico named) as to compensation paid to real estate agents or brokers for the sale of real estate where there is no specific contract. Ans. Yes. In fact the custom is so general that in listing land it is very seldom that the commission is mentioned, because the general rule for broker's compensation is five per cent. on the sale of the property."

E. C. (Ted) Houton testified by deposition, in cross-interrogatories taken by defendant:

"Cross Int. No. 2: If you have answered to direct No. 4, that prior to June 11th, 1931, you had discussed with Tom Coggin the matter of purchasing his ranch, then state, Mr. Houton, if it is not a fact that sometime after June 11th, 1931, and after the contract of sale had been made between you and Tom Coggin for purchase of the ranch, that on the streets of Nara Visa, New Mexico, and sitting in Jim Bursom's car, and in the presence of Jim Bursom, W. L. McIntosh and Henry Mooney, you made the positive statement, in the presence and hearing of each of these parties, that you had never talked to Tom Coggin in your lifetime about the purchase of this ranch until the time you went to look over the ranch about the time you were making a contract to purchase. Please answer this question 'yes' or 'no.' Ans. I will not answer this question yes or no. But will say that at this particular time that I had not talked to Mr. Coggin about the purchase of this ranch until it was presented to me by Henry Mooney."

"Cross Int. No. 9: Is it not a further fact, Mr. Houton, that this information coming from Henry Mooney, was the first information you had that the Coggin ranch was for sale? Ans. Yes."

We think the petition sufficiently alleges a contract on the part of defendant, T. J. Coggin, to pay J. W. Bursom and W. L. McIntosh a commission for the sale of the Coggin ranch. The petition, as we view it, states all of the facts essential to constitute an implied promise to pay the stated customary commission for the service to be performed in effecting a sale of the ranch and a performance of such service by effecting sale on the agreed terms.

The facts of this case distinguish it, we think, from Dunn v. Price, 87 Tex. 318, 28 S. W. 681, referred to by appellant, where the mere quotation of the owner to a broker of his price at the solicitation of the broker does not imply that the owner engages the broker to effect a sale. 7 Tex. Juris. p. 407, par. 24.

The evidence justified the submission of the case to the jury on the facts.

Appellant quotes at length from the testimony of Mr. Coggin. It will be recalled, however, that, in determining the question now under discussion, the sufficiency of the evidence to require the submission of the facts to the jury, we can consider only such evidence as tends to sustain the jury's findings. The jury determines the conflict in the evidence.

The evidence offered, as stating a contract of employment, to find a purchaser for the property, does not show an express agreement to pay a commission for such service, nor does it show the amount to be paid. Where the fact of employment is established by the evidence, a promise to pay need not be proved, since the law implies a promise to pay compensation. McCartney v. Harbin (Tex. Civ. App.) 5 S.W.(2d) 780; Williams & Jones v. Gouldy (Tex. Civ. App.) 239 S. W. 364. What is implied in a contract is as much a part of it as though it were expressed. The breach of an implied provision in a contract gives rise to a right of action, the same as if it had been stated in the contract. Ben C. Jones & Co. v. Gammel-Statesman Pub. Co.,

100 Tex. 320, 99 S. W. 701, 8 L. R. A. (N. S.) 1197.

█ Here the pleading and the evidence sufficiently show, we think, that the parties contracted, as to compensation, with reference to the custom to be paid for the service of finding a purchaser. The petition states that the usual and customary compensation paid by owners of land to agents in that locality was the amount sued for, sufficient, we think, to admit proof of the custom. The evidence shows that the custom as to compensation paid brokers for such services is general in that section of Texas and New Mexico; that is, so usual and notorious that knowledge of the custom ought to be imputed to the seller. Cooke v. Ellis (Tex. Civ. App.) 196 S. W. 642, 643, and cases cited.

Defendant suggests error in rendering judgment for McIntosh, for the reason that the pleadings and evidence conclusively show that McIntosh is a subagent of Bursom, and had no right of action against Coggin.

█ McIntosh is not asserting a cause of action in his own right, separate and apart from Bursom, for any part of the compensation. The record shows no controversy between Bursom and McIntosh as to any part of the commission. The petition alleges, and the evidence shows, that, in pursuance of Bursom's contract with Coggin, Bursom enlisted the aid of McIntosh in procuring a purchaser for the ranch, and that both acting together procured the purchaser. The evidence shows that at all times McIntosh was helping and working with Bursom in the sale of land and cattle; that Bursom advised McIntosh that Coggin had listed his ranch for sale; that McIntosh had been engaged in the commission business with Bursom for several years prior to this transaction. McIntosh took Mooney to the Coggin ranch, and said to Coggin: "I brought Mr. Mooney down here to look at this ranch through a listing you gave Jim Bursom." Coggin replied: "What did he price it at?" McIntosh said: "$35,-000.00 flat." Coggin said: "That is right."

Henry Mooney, in his evidence, added to the above one additional statement; that McIntosh told Coggin who the buyer was, and that Mooney and Houton were partners. Coggin accepted the service of McIntosh and showed the ranch to Mooney, and sale of the ranch was made to Houton on the terms proposed by Coggin to Bursom and to McIntosh.

The evidence clearly shows a joint acting together between Bursom and McIntosh in finding a purchaser for the ranch and with full knowledge and acquiescence of Coggin. We think, under the facts of the case, as between Bursom and McIntosh, if McIntosh was not a partner with Bursom in the transaction, and a joint owner in the commissions to be paid, if an equitable assignment by Bursom to McIntosh to an interest in such commission is not shown, which need not be in writing, it would at least be an agreement that Bursom and McIntosh were to be joint owners of the commission when earned. Thompson v. First Methodist Episcopal Church of Dallas (Tex. Com. App.) 38 S.W.(2d) 561; West Realty & Investment Co. et al. v. Hite et al. (Tex. Com. App.) 283 S. W. 481; Allen v. Roach (Tex. Com. App.) 292 S. W. 195.

We have concluded that under the pleading and the facts shown it was not error to render judgment jointly in favor of plaintiffs.

Finding no reversible error, the case is affirmed.